UNITED STATES of America,
Plaintiff–Appellee,

v.

Norman D. WRIGHT,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

George W. KIRBY, Jr.,
Defendant–Appellant.

Nos. 90–3000, 90–3038.

United States Court of Appeals,
Tenth Circuit.

May 3, 1991.

Rehearing Denied July 11, 1991.

John C. Humpage, Topeka, Kan., for defendant-appellant Wright.

Marilyn M. Trubey, Asst. Federal Public Defender (Charles D. Anderson, Federal Public Defender, with her on the brief), for defendant-appellant Kirby.

Kurt J. Shernuk, Asst. U.S. Atty., Topeka, Kan. (Lee Thompson, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, SEYMOUR, and ANDERSON, Circuit Judges.

SEYMOUR, Circuit Judge.

On April 4, 1989, defendants Norman D. Wright and George W. Kirby were jointly indicted for offenses relating to their participation in drug trafficking in Kansas.[1] Count I of the indictment charged both defendants with conspiring to distribute cocaine in violation of 21 U.S.C. § 846 (1988). Count II charged the defendants with attempting to distribute cocaine, also in violation of 21 U.S.C. § 846. Count III charged Kirby with carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), and Count IV charged Wright with the same. Count V charged Kirby with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and Count VI charged Wright with the same. Count VII charged Wright with distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). On June 26, 1989, a superseding indictment was returned, with Count I amended to extend the conspiracy to include the manufacture and distribution of methamphetamine, as well as the distribution of cocaine. The other counts remained unchanged. After a five-day jury trial,[2] defendants were convicted on all counts of the superseding indictment. Both defendants were sentenced to aggregate terms of 180 months. On appeal,

1. Gid Dyche also was indicted as a co-conspirator. He later pled guilty and testified against Wright and Kirby at trial.

2. Kirby did not show up for the trial, and was tried *in absentia.*

defendants seek reversal of their convictions and sentences, arguing that the district court committed numerous errors. We disagree, and affirm.

## I.

## FACTUAL BACKGROUND

"In setting forth the circumstances giving rise to this appeal, we view the evidence in the light most favorable to the jury's verdict." *United States v. Kendall,* 766 F.2d 1426, 1429 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986).

On January 9, 1989, Robert Maddox approached Agent Robert Farrell of the FBI and volunteered to supply information concerning drug activity in Topeka, Kansas. At that time he named several people who he said were involved in drug dealing, including defendants Wright and Kirby. Maddox told Agent Farrell that he had obtained methamphetamine and cocaine from Wright for two years—for the first year and a half through a middleman named Al Hamilton, and for the previous six months directly from Wright. Maddox also said that he had been operating a methamphetamine lab with a number of partners at Hamilton's house in Jefferson County, Kansas, and that Wright had financed the lab in order to create a source for Wright's methamphetamine distribution.

Four days after their first meeting, Maddox again met with Agent Farrell and told him that the methamphetamine lab had been dismantled and was in his possession. He explained that the methamphetamine "cook", Rudy Perez, had become disturbed that he had not received any money for his efforts, and that he had gone to Hamilton's house, tied Hamilton up, and stolen several items from the house. Hamilton eventually broke loose and called both Maddox and Kirby for help. When Maddox arrived at the house, he found Kirby already there, armed with a semi-automatic handgun.

Kirby left a note for Hamilton demanding that Hamilton never call him again and that Hamilton make sure his telephone bill did not reflect a call to Kirby's residence. Maddox turned over to the FBI various chemicals and items that the Drug Enforcement Agency found to be components of a P2P methamphetamine lab.[3]

Agent Farrell subsequently agreed to use Maddox as an informant, and they arranged for Maddox to attempt to purchase drugs from Wright. Wired with a tape recorder, Maddox met with Wright several times in February and March at Houlihan's restaurant in north Topeka to discuss the potential for a deal. On February 8, Maddox and Wright met to discuss the availability of cocaine and methamphetamine. Wright stated that he didn't have either at the time and that the only coke available was "junk" and not of the quality he would sell to a friend. In response to Maddox's inquiry as to the availability of methamphetamine, Wright said that another methamphetamine lab had shut down before Maddox's had been dismantled and thus he did not have any.

Ten days later, Maddox again met Wright at Houlihan's. During their conversation, Kirby entered the restaurant and joined the men, carrying a Merck Index.[4] He asked Maddox whether a statement made by a defendant in the Jefferson County methamphetamine bust had implicated him. Wright asked the same question. Maddox also asked Wright about the availability of methamphetamine at this meeting and Wright replied that some might be available by the weekend and that Maddox should check back with him. When Maddox asked Wright whether Wright wanted him to go to Kansas City to pick up hydriodic acid (a chemical used to make methamphetamine), Wright responded that he still was interested but that Maddox should come back later for a final answer.

---

**3.** Maddox later pled guilty in Jefferson County to state charges of conspiring to manufacture methamphetamine.

**4.** A Merck Index is a chemist's index that describes chemicals used to form different chemical compounds.

On March 3, Wright was observed in the parking lot of Houlihan's restaurant removing something from his car, entering Gid Dyche's car and driving with Dyche for a short time before returning to the parking lot. Later that day, Dyche sold to Maddox methamphetamine that had been supplied by Wright. On March 7, a deal was struck where Dyche would sell cocaine, again supplied by Wright, to an undercover FBI agent, Michael Jenkins, posing as a friend of Maddox. The deal was set for March 21. Dyche, Wright and Kirby met on March 20 at Houlihan's and departed together. Later that day, Dyche called Agent Jenkins and told him he could supply him with a pound and a half of cocaine. They arranged to meet at a restaurant in Rossville, Kansas, at noon the following day.

Prior to the deal, Maddox described to Agent Farrell the way in which the transaction would take place. He said that Wright would park his vehicle north of Rossville and wait with the cocaine. Dyche would meet Agent Jenkins to provide him with a sample and to make certain Jenkins had the money for payment. Dyche then would drive to Wright's location, obtain one half pound of cocaine, return to Agent Jenkins for payment and repeat this process for the sale of the remaining pound. Maddox also told Agent Farrell that if Wright brought anyone with him it would be Kirby, for protection.

When Agent Jenkins met Dyche in Rossville, Dyche told him that the deal would be held in Silver Lake instead, the next town east of Rossville. In Silver Lake, Dyche supplied Agent Jenkins with four ounces of cocaine and Agent Jenkins told him that the quality was acceptable. Dyche immediately called Wright at Houlihan's and Wright told him he would meet Dyche at the location outside Silver Lake they had previously agreed upon, in order to collect the money for the quarter ounce and to distribute the remainder of the drug. Dyche was then arrested. After the call, Wright and Kirby left Houlihan's in separate vehicles and drove towards Silver Lake. Kirby parked on a dirt road approximately three miles from Silver Lake and

Wright continued on for about another half mile and stopped in front of a trailer home. Kirby was situated so that he faced the only intersection that led to Wright's location.

After Dyche's arrest, the FBI agent drove his vehicle to Kirby's location and arrested him as he sat in his car. As Kirby was removed from the car, a handgun fell from his lap onto the ground. A subsequent search of the car uncovered numerous firearms. Wright was arrested as he stood between his vehicle, a pickup truck with its hood raised, and the trailer home. A rifle was discovered eight feet from Wright hidden in a pipe. The agents obtained consent to search from the owner of the trailer and found an envelope of cocaine inside the trailer's skirting. When Agent Farrell left to return to Topeka to obtain a search warrant for Wright's truck, Agent Walker got into the truck to see whether he could start it or if it needed a tow. When he opened the door, Agent Walker noticed a camera case containing a large sum of money in the map pocket of the driver's door. The case was seized and Agent Walker counted $8,750. The rest of the truck was searched when Agent Farrell returned with the search warrant.

## II.

### VARIANCE

Both defendants contend that an impermissible variance occurred when the Government's evidence at trial proved the existence of multiple conspiracies, rather than the one broad conspiracy charged in the first superseding indictment. Pointing to the fact that the district court noted at the charging conference that it was "very difficult" to find evidence linking Kirby to the manufacture and distribution of methamphetamine, Kirby argues that the court impermissibly varied the indictment when it instructed that the jury could find him guilty if it found he was a conspirator solely in the distribution of cocaine. He contends that the jury should have been instructed to acquit if it did not find that Kirby was a participant in the single, over-

all conspiracy to manufacture and distribute methamphetamine and to distribute cocaine.

The Fifth Amendment requires that a defendant be tried only on charges handed down by a grand jury. *See Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). Thus, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* at 215–16, 80 S.Ct. at 272. A variance that broadens the indictment constitutes a constructive amendment and is reversible per se. *Hunter*, 916 F.2d at 599; *Apodaca*, 843 F.2d at 428. A variance rises to the level of a constructive amendment " 'if the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment.' " *Hunter v. State of New Mexico*, 916 F.2d 595, 599 (10th Cir.1990) (quoting *United States v. Apodaca*, 843 F.2d 421, 428 (10th Cir.), *cert. denied*, 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988)). When an amendment occurs, the jury "convict[s] the defendant upon a factual basis that effectively modifies an essential element of the offense charged." *United States v. Chandler*, 858 F.2d 254, 257 (5th Cir.1988).

Kirby contends the district court effectively amended the indictment by instructing the jury that his participation in the cocaine conspiracy alone was sufficient to support a conviction. We recently addressed this issue in *United States v. Mobile Materials*, 881 F.2d 866, 874 (10th Cir. 1989), where we pointed out that in *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985), "the Supreme Court indicated that the fifth amendment grand jury guarantee is not violated if a defendant is convicted upon evidence which tends to show a narrower scheme than that contained in the indictment, provided that the narrower scheme is fully included within the indictment." The Court explained that

"[a]s long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *Id.* at 136, 105 S.Ct. at 1815. In this case, the conspiracy to distribute cocaine was fully included within the first superseding indictment. Thus, no constructive amendment occurred.

A variance that does not rise to the level of a constructive amendment does not require reversal per se, but instead requires that we examine the record as a whole to determine whether the variance affected the substantial rights of the accused or whether it constituted harmless error. *See Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946); *Berger v. United States*, 295 U.S. 78, 81–82, 55 S.Ct. 629, 630–631, 79 L.Ed. 1314 (1935); *United States v. Morris*, 623 F.2d 145, 149–51 (10th Cir.), *cert. denied*, 449 U.S. 1065, 101 S.Ct. 793, 66 L.Ed.2d 609 (1980). The Supreme Court has held that a variance is not harmless if the evidence adduced against co-defendants involved in separate conspiracies was more likely than not imputed to the defendant by the jury in its determination of the defendant's guilt. *See Kotteakos*, 328 U.S. at 772–77, 66 S.Ct. at 1251–54.

A district court's instructions may safeguard a defendant from any impermissible prejudice flowing from evidence tending to establish the existence of a conspiracy in which she or he did not participate:

"When a single conspiracy is alleged in the indictment but 'the proof at trial reveals the existence of more than one conspiracy, "the adequacy of the trial judge's instructions is of critical importance...." ' In such a situation ... the district court should give a multiple conspiracy instruction and a cautionary instruction that evidence relating to other conspiracies may not be used against [her or] him."

*United States v. Townsley*, 843 F.2d 1070, 1082 (8th Cir.) (citations omitted), *modified on other grounds*, 856 F.2d 1189 (1988) (en banc). *See Mobile Materials*, 881 F.2d at

874–75; *United States v. Anguiano,* 873 F.2d 1314, 1317–18 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989); *United States v. Mack,* 837 F.2d 254, 258 (6th Cir.1988); *United States v. Johnson,* 515 F.2d 730, 735 (7th Cir. 1975); *United States v. Butler,* 494 F.2d 1246, 1256 (10th Cir.1974); *United States v. Griffin,* 464 F.2d 1352, 1355–57 (9th Cir.), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 444, 34 L.Ed.2d 302 (1972); *see also Kotteakos,* 328 U.S. at 776–77, 66 S.Ct. at 1253–54. Such instructions serve to "alert[ ] the jurors to the possibility of multiple conspiracies and admonish[ ] them to separate and distinguish such conspiracies and the defendants involved therein." *Butler,* 494 F.2d at 1256. A court can thus "place[ ] a clamp on any possible prejudice which might have seeped from the variance." *Griffin,* 464 F.2d at 1357.

In this case, Instruction 12[5] properly alerted the jury to the possibility that the evidence may have established the existence of two separate conspiracies. The instruction informed the jury that it could convict a defendant based on his participation in only one of the conspiracies, if the jury found more than one. In addition, Instruction 8[6] explained that the jury must consider separately the evidence pertaining to each defendant. Accordingly, we conclude that the variance did not affect Kirby's substantial rights, and thus it was harmless.

■ Wright alleges that the variance created a spill over effect, or a likelihood of transference of guilt to him from evidence presented relating to the methamphetamine conspiracy. Normally, in assessing whether potential prejudicial spillover impermissibly affected the fairness of a trial in which a variance occurred, we review the record to see:

"*First,* whether the proliferation of separate crimes or conspiracies presented in

5. Instruction 12 reads in pertinent part:
 "What the evidence in the case must show beyond a reasonable doubt is:
 "(1) That two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the Indictment; and
 "(2) That the defendants willfully became members of such conspiracy.
 "One may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names and identities of all the other alleged conspirators. So, if a defendant, with an understanding of the unlawful character of a plan, knowingly and willfully joins in an unlawful scheme on one occasion, that is sufficient to convict him for conspiracy even though he had not participated at earlier stages in the scheme and even though he played only a minor part in the conspiracy.
 "Of course, mere presence at the scene of an alleged transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not thereby become a conspirator.
 "*Although the Indictment charges a single conspiracy, it would be possible to find separate conspiracies, one relating to the manufac-*

*ture and distribution of methamphetamine and the other relating to the distribution of cocaine. Whether there was one conspiracy, or two conspiracies, or no conspiracy at all is a fact for you to determine in accordance with these instructions. If you find beyond a reasonable doubt that a defendant was involved in the single conspiracy charged in the Indictment or in separate conspiracies to manufacture and distribute methamphetamine or to distribute cocaine, then you must find that defendant guilty.*
 "If you find that the defendants were members of another conspiracy, not the one charged in the Indictment, then you must acquit the defendants. In other words, to find the defendants guilty, you must find that they were members of the conspiracy charged in the Indictment and not some other separate conspiracy."
 Rec., vol. I, doc. 81 (emphasis added).

6. Instruction 8 reads:
 "It is your duty to give separate personal consideration to the case of each individual defendant. When you do so, you should analyze what the evidence in the case shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his case determined from the evidence as to his own acts and statements and conduct and any other evidence in the case which may be applicable to him."
 Rec., vol. I, doc. 81.

the case impaired the jury's ability to segregate each individual defendant's actions and the evidence associated with [her or] his participation; *Second,* whether confusion among members of the jury concerning the legal limitations on the use of certain evidence resulted from the variance; and, *Third,* the strength or weakness of the evidence underlying the jury's conviction."

*Morris,* 623 F.2d at 149.

Wright argues that there was insufficient evidence to tie him to the methamphetamine conspiracy and that, therefore, evidence admitted relating to this conspiracy impermissibly affected his right to a fair trial. We address his variance argument by simply stating that the evidence underlying his conviction for *either* conspiracy was strong enough that any prejudice arising from the variance was harmless.

### III.

### JOINDER

■ Both defendants sought to sever the counts of the indictment pertaining to the firearm charges lodged against the other defendant or, in the alternative, to sever their trials from each other. We consider the district court's decision to deny severance under the abuse of discretion standard. *United States v. Esch,* 832 F.2d 531, 537 (10th Cir.1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988); *United States v. Rinke,* 778 F.2d 581, 590 (10th Cir.1985).

■ Joinder of two or more defendants is allowed if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed.R.Crim.P. 8(b). In our circuit, the general rule is try persons jointly indicted together, *Rinke,* 778 F.2d at 590, and we will not reverse the lower court's decision absent a strong showing of prejudice, *Esch,* 832 F.2d at 537. "Where the evidence overlaps, the offenses are similar and the opera[tive] events occurred within a relatively short span of time, joinder of

defendants and offenses is proper." *Esch,* 832 F.2d at 538. Substantive offenses arising out of a conspiracy can be joined together because they arise out of the same transaction. *See United States v. Riebold,* 557 F.2d 697, 707 (10th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977). The prejudice caused by the joinder must be weighed against considerations of judicial economy. *Rinke,* 778 F.2d at 590. In this case, the firearm charges obviously arose out of the same transaction that formed the part of the conspiracy count alleging cocaine distribution and the defendants fail to allege any facts amounting to strong prejudice. Thus, joinder was proper.

■ The defendants' arguments under Fed.R.Crim.P. 14 also are unavailing. Rule 14 states in part:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

As under Rule 8(b), the defendants must make a clear showing that prejudice would result from a joint trial. *United States v. Troutman,* 814 F.2d 1428, 1447 (10th Cir. 1987). Kirby's most compelling argument is that he was prejudiced by joinder with a defendant who was involved in a conspiracy in which Kirby was arguably not a participant. We conclude, however, that the district court's instructions correctly informed the jury that Kirby's participation in the cocaine conspiracy alone was a sufficient basis for conviction and that the jury should evaluate the evidence against each defendant separately. Further, "absent evidence to the contrary, we presume that the jury was able to follow the court's instructions and evaluate the evidence against each defendant independently." *United States v. Badia,* 827 F.2d 1458, 1466 (11th Cir.1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1115, 99 L.Ed.2d 275 (1988). Furthermore, the evidence proving Kirby's

participation in the cocaine conspiracy was strong and any joinder error therefore was harmless. *See United States v. Lane,* 474 U.S. 438, 450, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986).

 Wright also contends that the joint trial was improper. We find his arguments of general prejudice even less persuasive than those presented by Kirby, and hold that the district court did not abuse its discretion in joining his trial with Kirby's. *See Troutman,* 814 F.2d at 1447 ("Mere assertion [her or] his chances for acquittal would be better if tried separately is insufficient; [defendant] must affirmatively show that a joint trial abridges [her or] his right to a fair trial."). Additionally, because the court instructed the jury, both at the beginning and at the end of the trial, that it should not construe the absence of Kirby as evidence of guilt of either Wright or Kirby, we hold that the court properly denied Wright's motion to sever based on Kirby's absence.

## IV.

### SUPPRESSION OF EVIDENCE

Both defendants appeal the district court's denial of their motion to suppress evidence seized during their arrest.

"In an appeal of the denial of a defendant's motion to suppress evidence, our standard of review is to accept the trial court's findings of fact, unless clearly erroneous, and to consider the evidence in the light most favorable to the Government."

*United States v. McAlpine,* 919 F.2d 1461, 1463 (10th Cir.1990). We review the legal conclusion extrapolated from those facts *de novo. United States v. Butler,* 904 F.2d 1482, 1484 (10th Cir.1990).

 Kirby argues that the firearms seized during the course of his arrest should have been suppressed because the arrest was made without a warrant and was not supported by probable cause. Law enforcement personnel may arrest a person without a warrant if there is probable cause to believe that person committed a crime. *United States v. Watson,* 423 U.S.

411, 417, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The test for probable cause is "whether at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [officer] in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). After an evidentiary hearing, the district court found that Kirby left Houlihan's restaurant, accompanied by Wright, a minute after Dyche called Wright to confirm that the drug deal was in process. Kirby drove towards the scene of the drug buy and stopped his car one half mile from where Wright was positioned with the cocaine. Significantly, Maddox had told the FBI that if Wright brought anyone with him to the drug sale, it would be Kirby for protection. We hold that these facts were sufficient to support probable cause to arrest Kirby. With respect to the seizure of the handgun, the district court found that the gun had fallen out of Kirby's lap during the course of his arrest. The admission of the handgun was proper because it came into plain view as the agents made a valid arrest, and

"'[w]here the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate.'"

*Horton v. California,* —— U.S. ——, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971)); *see United States v. Tisdale,* 921 F.2d 1095, 1097 (10th Cir. 1990). The search of the Kirby's passenger compartment was authorized under the search-incident-to-arrest doctrine enunciated in *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969), tailored to these circumstances in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In *Belton,* the Supreme Court held that when a suspect is arrested in a car, law enforcement personnel may search the passenger

compartment as part of the area within the arrestee's immediate control. *Id.* at 460, 101 S.Ct. at 2864; *see United States v. Butler,* 904 F.2d at 1484; *United States v. McKinnell,* 888 F.2d 669, 672 (10th Cir. 1989). Kirby was arrested as he sat in his car and thus the district court properly admitted the firearms seized from the passenger compartment of his vehicle.

 *Belton,* however, does not support the Government's position that Wright's *trunk* could be searched without a warrant. *See Belton,* 453 U.S. at 460 n. 4, 101 S.Ct. at 2864 n. 4 (explicitly excluding automobile trunk from area within arrestee's immediate control). In fact, *Belton* held that "[t]he trunk of the vehicle ... is not within the scope of a search incident to arrest." *United States v. Thompson,* 906 F.2d 1292, 1298 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990), *see United States v. Hernandez,* 901 F.2d 1217, 1220 (5th Cir.1990); *United States v. Schecter,* 717 F.2d 864, 868–69 (3d Cir.1983); *United States v. Freire,* 710 F.2d 1515, 1521–22 (11th Cir.1983), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984). The trunk is not within the reach of the arrestee and thus its contents pose no immediate threat to the arresting officer. *United States v. Blackman,* 904 F.2d 1250, 1254 n. 3 (8th Cir.1990). The district court's analysis recognized this distinction in its Memorandum Opinion of December 15, 1989, and instead upheld the search of the trunk based on Kirby's consent.

 A consent search is valid if the consent is voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Consent is not voluntary if it is obtained through duress or coercion. *Id.* at 227, 93 S.Ct. at 2047. Whether a search was voluntary is a question of fact to be determined by the district court from the totality of the circumstances. *Id.* at 248–49, 93 S.Ct. at 2058–59. We must accept the court's findings unless they are clearly erroneous. *United States v. Corral,* 823 F.2d 1389, 1393 (10th Cir.1987). At the evidentiary hearing, the district court found that Kirby

was asked by Agent Perkins if he would consent to a search of his vehicle, that he assented, and that he signed a consent form. Kirby does not contest these facts, but argues that the consent was involuntary. Kirby did not testify at the suppression hearing, and the district court specifically found that the consent was freely given. Our review of the record reveals nothing to indicate the contrary. We therefore conclude that the search of the trunk was valid and that the evidence contained therein was properly admitted.

 Wright contends that the evidence seized from his truck should be suppressed because it also was confiscated without a warrant. The Government argues and the district court found, however, that the truck was searched pursuant to a warrant supported by sufficient probable cause. We agree. Agent Farrell testified at the suppression hearing that he drove to Topeka to obtain a search warrant subsequent to Wright's arrest. The warrant was issued at 5:30 that evening and Wright's truck was searched approximately two hours later when Agent Farrell returned to the scene. The court also found that the camera bag and money seized prior to the issuance of the warrant were in plain view as the FBI attempted to start Wright's truck to see if it needed to be towed to the station for impoundment and inventory. The Supreme Court has recognized that automobile impoundment and inventory are reasonable searches under the Fourth Amendment when "the process is aimed at securing or protecting the car and its contents." *South Dakota v. Opperman,* 428 U.S. 364, 373, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000 (1976). Thus, the absence of a warrant is immaterial to our analysis. *See Illinois v. Lafayette,* 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983). Because Wright alleges no facts to support the allegation that Agent Walker was inside the truck for purposes other than securing the vehicle pursuant to FBI procedure, *see Colorado v. Bertine,* 479 U.S. 367, 371–72, 107 S.Ct. 738, 740–41, 93 L.Ed.2d 739 (1987), we hold that the plain view doctrine discussed *supra* validates the seizure of the camera bag and money.

Wright's argument that the failure to disclose the seizure of the camera bag and money in the affidavit for the search warrant invalidates the warrant is absurd. The camera bag was not found in plain view until *after* Agent Farrell left to obtain the warrant. Moreover, there was sufficient independent probable cause to issue a search warrant for the truck without this evidence.

## V.

### KIRBY'S TRIAL *IN ABSENTIA*

Kirby next urges that his constitutional right to be present at his trial was violated when the district court elected to try him *in absentia* after he failed to appear for the proceedings. An accused has a Sixth Amendment right to be present in the courtroom at every stage of her or his trial, unless the right is waived. *Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 253, 56 L.Ed. 500 (1912); *United States v. Songer*, 842 F.2d 240, 242 (10th Cir.1988); *United States v. Tortora*, 464 F.2d 1202, 1208 (2d Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972). Absence without compelling justification constitutes a waiver of the right to be present at trial. *United States v. Peterson*, 524 F.2d 167, 184–85 (4th Cir.1975), *cert. denied*, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). The Federal Rules of Criminal Procedure codify this right, and further provide that a defendant's presence is not required if she or he "voluntarily absents [herself or] himself after the trial has commenced." Fed.R.Crim.P. 43(b)(1).

We review the district court's decision to proceed with the trial in Kirby's absence under the abuse of discretion standard. *United States v. Muzevsky*, 760 F.2d 83, 84 (4th Cir.1985). We note, however, that this important Sixth Amendment right "cannot cursorily, and without inquiry, be deemed by the trial court to have been waived simply because the accused is not present when [she or] he should have been." *United States v. Beltran–Nunez*, 716 F.2d 287, 291 (5th Cir.1983). When Kirby did not show up for the first day of trial, the district court issued a bench warrant and continued the proceedings until the following day. When Kirby again failed to appear, the district court conducted an inquiry in an attempt to determine why Kirby was absent. Kirby's counsel told the court that Kirby had been preparing for trial and was aware of the trial date. No explanation was given for his absence and there was no indication that Kirby was going to appear.

After resolving the issue of waiver, the court must decide whether to proceed in a defendant's absence. A trial court should consider factors such as the likelihood that the trial could soon proceed with the defendant present, the difficulty of rescheduling, and the burden on the Government. *United States v. Rogers*, 853 F.2d 249, 252 (4th Cir.), *cert. denied*, 488 U.S. 946, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988); *Peterson*, 524 F.2d at 185; *Tortora*, 464 F.2d at 1210. Generally, the balance will favor proceeding without the defendant only in multi-defendant trials. *Rogers*, 853 F.2d at 252; *Tortora*, 464 F.2d at 1210 n. 7. In this case, the district court found that Kirby was aware of his obligation to appear, and that he voluntarily absented himself without excuse. The court then concluded that there was no likelihood Kirby would return shortly, and that it would be burdensome for the Government to have to conduct two trials, especially given the overlapping evidence and the likelihood that the Government's witnesses would be placed in substantial jeopardy if more than one trial were held. Accordingly, we hold that the district court did not abuse its discretion when it elected to try Kirby *in absentia*.

## VI.

### CO–CONSPIRATOR STATEMENTS

Both defendants also appeal the district court's decision to admit statements of co-conspirators. We review this decision for an abuse of discretion. *Mobile Materials*, 881 F.2d at 872; *United States v. Hernandez*, 829 F.2d 988, 994 (10th Cir. 1987), *cert. denied*, 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988).

"[A] trial court may admit statements of co-conspirators under Fed.R.Evid. 801(d)(2) after finding, by a preponderance of the evidence that: 1) a conspiracy existed, 2) the declarant and the defendant against whom the declarations are offered were members of the conspiracy, and 3) the statements were made in the course of and in furtherance of the conspiracy."

*Mobile Materials*, 881 F.2d at 869; *see United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir.1990); *United States v. Doran*, 882 F.2d 1511, 1525 (10th Cir.1989). The district court also may rely on the hearsay statements themselves in making these determinations. *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987); *Johnson*, 911 F.2d at 1403; *Mobile Materials*, 881 F.2d at 869; *United States v. Wolf*, 839 F.2d 1387, 1392 (10th Cir.), *cert. denied*, 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). It is preferable that the court make these determinations before allowing the co-conspirator statements to be heard by the jury. *Hernandez*, 829 F.2d at 994 & n. 6. When these determinations are made pre-trial, the district court should reaffirm its findings at the conclusion of the presentation of the Government's evidence at trial. *Mobile Materials*, 881 F.2d at 869. Even if the co-conspirator hearsay is improperly admitted, the admission may constitute harmless error. *United States v. Machado*, 804 F.2d 1537, 1542 (11th Cir. 1986).

Kirby argues that the evidence was insufficient to link him to either conspiracy, and that the statements therefore should not have been admitted. The district court heard considerable evidence at the pre-trial hearing and concluded that the Government presented substantial independent evidence that a conspiracy existed, that Wright, Kirby and Dyche were members of that conspiracy, and that the statements were made during the course of and in furtherance of their conspiracy. The court then reaffirmed these determinations after the close of the Government's case. Kirby argues that the evidence was insufficient to link him beyond a reasonable doubt

to the methamphetamine conspiracy. We disagree. Based on the court's instruction to view the evidence separately with respect to each defendant and the strong evidence of Kirby's participation in the cocaine conspiracy, the admission of statements concerning the methamphetamine conspiracy was harmless error with respect to Kirby.

Wright argues that the court should not have admitted any co-conspirator statements because he was not allowed to make a full presentation of evidence at the pretrial hearing concerning his participation in the conspiracy. Our review of the record, however, reveals that Wright's position is without merit. In fact, the district court *did* allow Wright's counsel to call the Government's informant, Robert J. Maddox, to the stand, and the court limited direct examination only insofar as it required counsel to make his questions relevant to the issue of Wright's participation in the conspiracy.

## VII.

### ADMISSION OF TAPE TRANSCRIPTS

Defendants next contend that the district court erred by admitting transcripts of taped conversations of defendants, arguing that they were not properly authenticated. Whether to admit transcripts is within the sound discretion of the trial court. *United States v. Mayes*, 917 F.2d 457, 462 (10th Cir.1990); *United States v. Devous*, 764 F.2d 1349, 1354 (10th Cir.1985). While it is true that the preferable means of authentication is stipulation between the parties or a pretrial determination by the court, the unrebutted testimony of one of the participants in the actual conversations is sufficient authentication. *Devous*, 764 F.2d at 1355. In this case, Maddox, the Government informant, was a participant in the conversations and gave unrebutted testimony that the transcripts were correct to the best of his knowledge. Unlike the circumstances in *Devous*, defense counsel here were given access to the tapes before trial and had made their own transcripts. They neither attempted to en-

ter into a stipulation with the Government nor offered to submit their own version of the transcripts at trial. We agree with the district court's conclusion that the inconsistencies between the transcripts and the tapes pointed to by defendants are insignificant. Maddox's testimony on cross-examination that several statements assigned to Wright could have been made by Kirby does not convince us that there was a deficiency in authentication. Moreover, the district court exercised due caution by instructing the jury that any inconsistencies should be resolved by resort to the tapes. *See United States v. Robinson,* 707 F.2d 872, 878 (6th Cir.1983).

## VIII.

### SUFFICIENCY OF THE EVIDENCE

Defendants also argue that there was insufficient evidence upon which a jury could find them guilty beyond a reasonable doubt. "In reviewing a criminal conviction, we examine the evidence in the light most favorable to the Government in order to determine whether the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt." *Kendall,* 766 F.2d at 1431.

■ Wright alleges that there was insufficient evidence to convict him of a violation of 18 U.S.C. § 924(c)(1) for using or carrying a firearm during and in relation to a drug trafficking offense, and 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. With regard to the conviction under section 924(c)(1), he argues that because the rifle that was the basis of the conviction was found neither on his person nor in his vehicle, the Government did not bear its burden of establishing the requisite dominion and control over the gun to sustain a conviction under the statute. We disagree. In *United States v. Williams,* 923 F.2d 1397, 1402–03 (10th Cir.1990), we recently held that to convict under section 924(c)(1) the Government carries its burden when it proves the firearm was readily accessible to the defendant and its avail-

ability increased the likelihood that the criminal venture would be successful. *See United States v. Martinez,* 912 F.2d 419, 420 (10th Cir.1990); *McKinnell,* 888 F.2d at 675; *United States v. Cardenas,* 864 F.2d 1528, 1533 (10th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). The facilitation of the crime through the use of a firearm may be accomplished by "embolden[ing] an actor who had the opportunity or ability to display or discharge the weapon to protect [herself or] himself or intimidate others, *whether or not such display or discharge in fact occurred."* *Williams,* 923 F.2d at 1403 (quoting *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985), *cert. denied,* 484 U.S. 867, 108 S.Ct. 192, 98 L.Ed.2d 144 (1987)) (emphasis added); *see United States v. Brockington,* 849 F.2d 872, 876 (4th Cir.1988) (conviction proper under § 924(c)(1) if firearm present for protection or to facilitate likelihood of success, whether or not actually used). The evidence at trial showed that Wright had carried the rifle in his truck in the months preceding his arrest. After his arrest, the rifle was discovered eight feet from where he had positioned himself for the drug deal. We hold that the jury's verdict was based on sufficient evidence to conclude that the rifle facilitated the success of the cocaine sale by its potential use as either a means of protection or coercion.

■ With respect to the violation of section 922(g)(1), Wright contends there was insufficient evidence to establish that he "knowingly possessed" the rifle—an essential element of the crime. We again disagree. The district court properly instructed the jury that knowing possession may be actual or constructive, and that a person knowingly in constructive possession of an item has the power to exercise dominion and control over it. *See United States v. Anderson,* 881 F.2d 1128, 1141 (D.C.Cir.1989); *United States v. Medina-Ramos,* 834 F.2d 874, 876 (10th Cir.1987). Viewed in the context of the drug transaction, the evidence of the close proximity of the rifle is sufficient to establish constructive possession and thus to support the jury's verdict.

Kirby claims the Government failed to prove that he had knowledge of the conspiracy. We hold there was sufficient evidence before the jury for it to infer that Kirby knowingly joined and acted in furtherance of the cocaine conspiracy when he left Houlihan's with Wright and stationed himself near the scene of the drug deal with numerous firearms in his possession, including a loaded handgun in his lap.

## IX.

### SENTENCE ENHANCEMENT

Finally, both defendants argue that their sentences were improperly enhanced pursuant to 21 U.S.C. § 851 (1988), which provides, in pertinent part:

"No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, *unless before trial*, or before entry of a plea of guilty, *the United States attorney files an information with the court* (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."

*Id.* § 851(a)(1) (emphasis added).

If the Government chooses to file an information pursuant to section 851, the court, after conviction but before the pronouncement of sentence, must inquire whether the defendant affirms or denies that she or he previously has been convicted as alleged in the information. *Id.* § 851(b). The court must inform the defendant that any challenge to a prior conviction must be made before sentence is imposed and if it is not, it may not thereafter be raised to attack the sentence. *Id.* If the defendant does challenge any of the allegations contained in the information, she or he must file a written response and serve it on the Government, and the district court must hold a hearing to resolve the issues raised by the defendant. *Id.* § 851(c)(1). Failure to file the information prior to trial deprives the district court of jurisdiction to impose an enhanced sentence. *See United States v. Novey,* 922

F.2d 624, 627 (10th Cir.1991); *United States v. Weaver,* 905 F.2d 1466, 1481 (11th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991); *United States v. Olson,* 716 F.2d 850, 853 (11th Cir.1983); *United States v. Cevallos,* 538 F.2d 1122, 1126–27 (5th Cir.1976). Therefore, the harmless error doctrine is not applicable. *Weaver,* 905 F.2d at 1481.

Defendants argue that the district court did not have the power to enhance their sentences because, although the Government filed an information subsequent to the first indictment, the Government failed to file another information after the filing of the superseding indictment.

Whether such a subsequent filing is necessary under section 851 appears to be an issue of first impression. Under the circumstances of this case, we hold that the filing of the information after the initial indictment was sufficient. By filing an information noting its intention to seek an enhanced sentence, the Government complied with both the letter and the spirit of the law. The statute mandates that the information be *filed before trial*—this was done. The purpose of the statute is to give defendants an opportunity to show they had not been previously convicted of those crimes subjecting them to increased penalties. *See Novey,* 922 F.2d at 628 & n. 4. Here, the statute's purpose was furthered because defendants were given adequate notice that they would have to prepare to challenge the previous convictions, and the court was forewarned that it would have to comply with section 851(b). This is not a case where the information was filed but not served on the defendants, and Wright's reliance on *United States v. Carvajal–Minota,* 706 F.Supp. 726 (N.D.Cal.1989), *aff'd on other grounds,* 905 F.2d 1292 (9th Cir. 1990), is therefore misplaced. Accordingly, we hold that the Government complied with the mandatory requirements of section 851, and that the district court had jurisdiction to impose the enhanced sentences.

AFFIRMED.