**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 26 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

CHIP J.W. TEAGUE,

    Defendant-Appellant.

No. 00-7072
(E.D. Okla.)
(D.Ct. No. 99-CR-79-S)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **SEYMOUR**, **BALDOCK**, and **BRORBY**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In October 1999, a grand jury returned an eleven-count indictment against

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Teague for various controlled substance and firearm violations. The jury

found Mr. Teague guilty of ten counts, and the district court sentenced him to 495

months imprisonment.[1] On appeal, Mr. Teague contends the district court

impermissibly amended the indictment.[2] We exercise jurisdiction pursuant to 28

U.S.C. § 1291 and affirm.

BACKGROUND

Since the parties do not dispute the facts of the case, we repeat only those

relevant to Mr. Teague's issue on appeal. While Mr. Teague was on bond for

controlled substance and firearm violations discovered pursuant to a November

1998 traffic stop, officers received information reporting Mr. Teague's

methamphetamine manufacturing. Subsequently, officers obtained a search

warrant for Mr. Teague's residence. On May 25, 1999, officers executed the

warrant and seized an operational drug lab, 134 grams of actual

methamphetamine, and numerous firearms. Mr. Teague was arrested and released

---

[1] Prior to submitting the case for jury determination, the district court granted Mr. Teague's motion for judgment of acquittal on Count Ten of the indictment.

[2] At the outset, we note only Counts Four through Nine of the indictment contain the inaccurate address. Mr. Teague challenges here as a variance to the government's evidence at trial. Therefore, Mr. Teague's issue on appeal impacts these counts exclusively. Accordingly, we limit our discussion to Counts Four through Nine of the indictment.

on bond.

While Mr. Teague was again on bond, the officers received information Mr. Teague had resumed his methamphetamine manufacturing. Consequently, they obtained a second search warrant for his residence. On July 22, 1999, the officers executed the second search warrant and seized another operational drug lab, a firearm and a negligible amount of a controlled substance. Charges were filed against Mr. Teague who was released on bond pending further action.

The grand jury returned an eleven-count indictment against Mr. Teague. Counts One through Three regard Mr. Teague's possession of controlled substances and firearms discovered during a November 1998 traffic stop. Counts Four through Nine stem from the two searches of his residence. Count Eleven involves another traffic-related incident in which police found firearms in Mr. Teague's possession.

Relevant to this appeal, Counts Four through Eight stem from the May 25, 1999 search of his residence. Counts Four and Five allege Mr. Teague violated 21 U.S.C. § 841(a)(1) by possessing with intent to distribute and manufacturing methamphetamine. Count Six alleges he violated 21 U.S.C. § 856(a)(1) by

knowingly and intentionally opening and maintaining a place for the purpose of manufacturing and distributing methamphetamine. Count Seven alleges Mr. Teague violated 18 U.S.C. § 922(g)(1) by possessing firearms in and affecting commerce after his prior conviction of a crime punishable by more than one year of imprisonment. Count Eight alleges he violated 18 U.S.C. § 924(c) by possessing, using and carrying firearms during and in relation to a drug trafficking crime.

Count Nine derives from the July 22, 1999 search of his residence. This count alleges Mr. Teague violated 21 U.S.C. § 841(a)(1) by manufacturing methamphetamine.

Counts Four through Nine of the indictment provided the location where the violations occurred as "Route 1 Box 77-1." However, the evidence at trial revealed the crimes actually occurred at "Route 3 Box 77-1." Mr. Teague objected at trial to the admission of certain government evidence based on its discrepancy with the "Route 1" address provided in the indictment. The trial court overruled Mr. Teague's objections and admitted the evidence. The district court instructed the jury that a variance between the indictment and the proof occurred. The jury instruction stated, in relevant part:

There has been a variance or difference between what is charged in the indictment and the evidence presented at trial with respect to the address or location where certain of the crimes charged are alleged to have been committed. With respect to the crimes charged, the location where the offense takes place is not an essential or material element of the crime.

Mr. Teague does not challenge this jury instruction on appeal.

Mr. Teague appeals the district court's decision admitting the government's evidence showing the controlled substance and firearm violations occurred at "Route 3," rather than "Route 1" as alleged in the indictment. He argues the district court "effectively amended the indictment by admitting evidence obtained in the search of a location different than the location stated in the indictment."

As a general matter, "[we] review the district court's rulings on the admission of evidence for abuse of discretion, if an objection is timely made." *United States v. Magleby*, 241 F.3d 1306, 1315 (10th Cir. 2001). However, we review de novo the legal question of whether there has been an amendment to or variance from an indictment. *See United States v. Williamson*, 53 F.3d 1500, 1512 (10th Cir.), *cert. denied*, 516 U.S. 882 (1995); *see also United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998).

DISCUSSION

According to Mr. Teague, the district court either actually or constructively amended the indictment, both of which are impermissible. The government disputes Mr. Teague's claim the variance rises to the level of an amendment, and instead suggests the variance is harmless and "immaterial." We examine each contention in turn.

*Amendment of the Indictment*

An amendment is reversible per se. *See Hunter v. State of New Mexico*, 916 F.2d 595, 599 (10th Cir. 1990), *cert. denied*, 500 U.S. 909 (1991); *see also United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986) (suggesting, in dicta, amendments are prejudicial per se). An actual amendment "occurs when the charging terms of an indictment are altered ... by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (citation omitted). *See also Hathaway,* 798 F.2d at 910. A constructive amendment occurs when "the evidence presented at trial, together with the jury instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *Hunter*, 916 F.2d at 599 (quotation marks and citation omitted). "In order to rise to this [constructive amendment] level, the change in the indictment must be more than

the addition or deletion of nonessential factual averments. Rather, the amendment must effectively alter the substance of the indictment." *Id.* When a constructive amendment occurs, "the jury convict[s] the defendant upon a factual basis that effectively modifies an essential element of the offense charged." *United States v. Wright*, 932 F.2d 868, 874 (10th Cir.) (quotation marks and citations omitted), *cert. denied,* 502 U.S. 962 (1991).

Mr. Teague asserts the district court actually amended the indictment by admitting evidence at trial that established the firearms and controlled substance violations occurred at "Route 3." However, there is absolutely no evidence in the record, and Mr. Teague cites none, indicating the indictment was actually amended. The charging terms in each count of the indictment remain unaltered since the grand jury last passed on them. *See Hathaway,* 798 F.2d at 910. Because we discern no evidence to substantiate Mr. Teague's claim that an actual amendment occurred, we turn to his alternative argument the indictment was constructively amended.

Mr. Teague suggests the government constructively amended the indictment "since the modification [*i.e.*, evidence the crimes actually occurred at 'Route 3'] goes to an essential element of the indictment." His constructive amendment

argument focuses almost exclusively on Count Six of the indictment.[3]

Specifically, he claims the government's proof at trial alters the essential element of "place" required in 21 U.S.C. § 856(a)(1).  We disagree.

Based on our review of the record, it is apparent the government's proof at trial did not alter the essential elements of the offense charged in Count Six.  The grand jury indicted Mr. Teague for violating 21 U.S.C. § 856(a)(1).  Such a charge requires proof of:  (1) knowingly; (2) opening or maintaining *any* place; (3) for the purpose of manufacturing, distributing, or using any controlled substance.  *See* 21 U.S.C. § 856(a)(1).

As is evident from the indictment, the government must prove, among other elements, Mr. Teague established a "place," and in this instance his residence, for the purpose of producing and distributing methamphetamine.[4]  However, the

---

[3] As to Counts Four, Five, Seven, Eight and Nine, Mr. Teague merely asserts "[i]n other counts Mr. Teague is charged with possessing with various other offenses at this location as well."  However, we cannot comprehend how the incorrect address listed in these firearm violations and drug possession and manufacturing counts "modifies an essential element of the offense charged." *Hunter*, 916 F.2d at 599.  None of the various charges mandate proof of the location, much less the exact address, where the alleged possession and manufacturing occurred.  *See* 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 922(g)(1), 924(c).

[4] Count Six states:

government need not prove that place was located on Route 1. *See generally United States v. Hamilton*, 992 F.2d 1126, 1130 (10th Cir. 1993) (acknowledging the government had to produce evidence at trial that defendant used a *firearm*, but was not required to prove the firearm was a .38 caliber revolver). Stated differently, none of the essential elements charged in the Count Six offense require proof of the physical or mailing address where the violation occurred; thus, the exact location where the "place" is established is irrelevant.[5] Accordingly, evidence establishing the offense occurred on Route 3, rather than on Route 1, fails to modify an essential element of the crime. The address in the

> From on or about May 25, 1999, until on or about July 22, 1999, at Route 1 Box 77-1, North of Sallisaw, Sequoyah County, Oklahoma, in the Eastern District of Oklahoma, [Mr. Teague], defendant herein, did knowingly and intentionally open and maintain a place for the purpose of manufacturing and distributing methamphetamine, a Schedule II Controlled Substance, to wit: the *residence* of [Mr. Teague], Route 1 Box 77-1, Sallisaw, Sequoyah County, Oklahoma, in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2

(Emphasis added.)

[5] Venue, or the place where the offense was committed and prosecution shall be had, is an element of the offense that must be proved by a preponderance of the evidence. *See United States v. Cryar*, 232 F.3d 1318, 1323 (10th Cir. 2000) *cert. denied,* ___ U.S. ___, 121 S. Ct. 1423 (2001); *see also United States v. Medina-Ramos*, 834 F.2d 874, 876 (10th Cir. 1987) (recognizing when a statute "does not specify venue, the place at which the crime was committed must be determined from the nature of the crime alleged and the location of the act or acts constituting it") (quotation marks and citation omitted). However, venue is not at issue in Mr. Teague's appeal, and our holding in this case must not be construed to affect our venue precedent.

indictment is mere surplusage. *See United States v. Smith*, 838 F.2d 436, 439 (10th Cir. 1988) (recognizing that proof of everything in the indictment is not required; i.e., "[w]hen the language of the indictment goes beyond alleging the elements of the offense, it is mere surplusage and such surplusage need not be proved") (quotation marks and citations omitted), *cert. denied,* 490 U.S. 1036 (1989). After reviewing the evidence presented at trial, together with the jury instructions, we hold the district court did not constructively amend the indictment by admitting the government's evidence at trial.

However, our conclusion the district court did not actually or constructively amend the indictment does not end our inquiry. We must now determine whether the variance affected Mr. Teague's "substantial rights" such that reversal is warranted. *See United States v. Ailsworth*, 138 F.3d 843, 848 (10th Cir.), *cert. denied,* 525 U.S. 896 (1998)*; see also United States v. Morris*, 623 F.2d 145, 149 (10th Cir.), *cert. denied*, 449 U.S. 1065 (1980).

*Variance to the Indictment*

A simple variance, "occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Hunter*, 916 F.2d at 598 (quotation marks omitted). When a simple

variance exists, "'convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment.'" *Id.* (quoting *United States v. Miller*, 471 U.S. 130, 136 (1985)). However, "[a] variance will cause a conviction to be overturned only when the variance affects the substantial rights of the accused – *i.e.*, 'only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy.'" *Hamilton*, 992 F.2d at 1130 (quoting *Hunter*, 916 F.2d at 599). The defendant bears the burden of showing "not only that the variance exists, but also that it is fatal [*i.e.,* affects his substantial rights]." *United States v. Moore*, 198 F.3d 793, 795-96 (10th Cir. 1999), *cert. denied,* 529 U.S. 1076 (2000).

"[W]e examine the record as a whole to determine whether the variance affected the substantial rights of the accused or whether it constituted harmless error." *Wright*, 932 F.2d at 874. We are mindful that when "interpreting an indictment, [this court is] governed by practical rather than technical considerations." *United States v. Phillips*, 869 F.2d 1361, 1364 (10th Cir. 1988) (citation omitted), *cert. denied,* 490 U.S. 1069 (1989). We read the indictment in its entirety, construing it with common sense and in light of its basic purpose to

inform the defendant of the pending charges. *Id.*

Although a variance between the indictment and proof at trial exists, Mr. Teague fails to claim he suffered prejudice in his defense by an inability to anticipate the government's evidence against him. *See Hunter*, 916 F.2d at 599. First, he certainly knew from the indictment the charges against him: possession with intent to distribute methamphetamine (Count Four); manufacturing methamphetamine (Counts Five and Nine); opening and maintaining a place for methamphetamine manufacture and distribution (Count Six); and firearm violations (Counts Seven and Eight). Moreover, he could anticipate the government's evidence against him because all of these counts stem from the May 25, 1999 and July 22, 1999 searches of his residence conducted pursuant to search warrants.[6] Not only did the indictment state the approximate date when the violations occurred, but also provided an itemized list of the numerous firearms and a description of the controlled substances recovered therefrom. Therefore, we hold that despite the technically imperfect address given in the indictment to indicate where the crimes occurred, the indictment plainly provided Mr. Teague

---

[6] Numerous witnesses testified the residence searched by the officers belonged to Mr. Teague. Mr. Teague's defense strategy consisted of cross-examining witnesses and introducing certain exhibits in an attempt to cast doubt on whether the residence allegedly searched actually belonged to him.

with sufficient detail and adequate notice of the pending charges and evidence against him. *See Phillips*, 869 F.2d at 1364; *see also Hunter*, 916 F.2d at 599. Accordingly, Mr. Teague's defense was not prejudiced by the variance.

Likewise, Mr. Teague fails to suggest any potential exposure to double jeopardy as a result of the variance. *See Hunter*, 916 F.2d at 599. It is evident his conviction based on the indictment "would bar a subsequent prosecution for the same offense" despite the inaccurate address. *United States v. Freeman*, 514 F.2d 1184, 1189 (10th Cir. 1975). From our review of the record, we hold Mr. Teague suffers no risk of double jeopardy.

Accordingly, we hold the district court did not impermissibly amend the indictment, and the variance between the indictment and proof at trial does not affect Mr. Teague's substantial rights. *See Wright*, 932 F.2d at 874. Therefore, the district court did not abuse its discretion by admitting the government's evidence at trial. Because Mr. Teague is represented by counsel, his motion to file a pro se brief is denied. *See United States v. Guadalupe*, 979 F.2d 790, 795

(10th Cir. 1992).  We **AFFIRM**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge
