UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Steven GUADALUPE,
Defendant–Appellant.

No. 91–6320.

United States Court of Appeals,
Tenth Circuit.

Nov. 6, 1992.

Susan M. Otto, Acting Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

James F. Robinson, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before SEYMOUR and MOORE, Circuit Judges, and KELLY, District Judge.*

JOHN P. MOORE, Circuit Judge.

Thomas Steven Guadalupe appeals his conviction on charges of conspiring to damage or destroy a building used in interstate commerce in violation of 18 U.S.C. §§ 844(i) and 371, and causing Michael James and another to damage a building with an explosive, 18 U.S.C. §§ 844(i) and 2. Following imposition of two concurrent sixty-month terms, defendant appeals raising issues of the sufficiency of the evidence, the propriety of jury instructions, errors in the imposition of sentence, and effective assistance of counsel. Our review of the record discloses the evidence was sufficient to sustain conviction, any error in the instruction was harmless, and the enhancements to the sentence were proper. Because the record discloses no basis for abandoning our rule prohibiting consideration on direct appeal of the effectiveness of trial counsel, we do not consider the issue.

Mr. Guadalupe operated a restaurant and jazz club in Oklahoma City adjacent to a clinic operated by Dr. John Chiaf. Over the course of time, Mr. Guadalupe and Dr. Chiaf had become embroiled in a continuing

---

* The Honorable Patrick F. Kelly, United States District Court Judge for the District of Kansas, sitting by designation.

dispute attributable to the overcrowding of the parking lot in front of Dr. Chiaf's building, ostensibly caused by the patrons of Mr. Guadalupe's establishments. Adding to the level of animosity, when Mr. Guadalupe attempted to enlarge his business, Dr. Chiaf's father protested to the city council. Although the protest was unsuccessful, the ill will between the men apparently prevailed.

In this context, Mr. Guadalupe approached Sean Gordon, a teenaged dishwasher employed in the defendant's restaurant, and told him in exchange for the $300 Sean owed defendant for a previous purchase, defendant wanted a job done. The following week, defendant told Sean he wanted Sean to blow up Dr. Chiaf's clinic.

After enlisting the aid of his friend, Bart Smiley, Sean met with defendant in the parking lot of defendant's restaurant. Also present were Bart and Bart's roommate, Michael James. James made bombs as "sort of a hobby" and claimed to be in production of a bomb.

At that meeting, defendant told Bart he could blow up either the building or Dr. Chiaf's car. Because Bart was reluctant to bomb the car, they settled on the clinic. For this service, Bart stated Mr. Guadalupe agreed to pay them "a large sum of money." Michael was more specific in his testimony and stated they were to receive $500.

Defendant said he wanted the roof to collapse, but Michael said that would be impossible because they did not have the capability to build a bomb of sufficient size. Defendant then told them they could not throw a bomb through a window because the windows were protected by alarms, so it was decided they could leave a bomb at the front door. Mr. Guadalupe added that he wanted the bomb to include gasoline so that the building would burn.

Several days later, Michael and Bart returned to the restaurant and showed defendant a bomb. When he saw it, defendant responded, "That ought to work."

About three weeks later, Sean called Bart and told him the defendant wanted the job done soon. Bart then arranged with Michael to bomb the clinic that evening.

Bart and Michael constructed a pipe bomb with a fuse, placed it in a bowling ball bag with a sprocket from a motorcycle and containers of gasoline and motor oil. About 3:00 a.m., they mounted a motorcycle and drove to the clinic. When they arrived, Bart placed the bomb at the front door, lit the fuse, and the two sped away.

Moments later, a police officer on his way to respond to another call spotted two people riding a motorcycle in the vicinity. Shortly thereafter he heard a police broadcast concerning an explosion and fire. When he concluded his first call, the officer went to the scene of the explosion to lend aid. While there, he again saw the same motorcyclists, who proved to be Bart and Michael returning to see whether the bomb had exploded, and gave chase. The boys were arrested and subsequently disclosed their participation in the bombing and agreed to cooperate with law enforcement officers.

Later that day, the boys returned to defendant's establishment with a hidden transmitter and a tape recorder.[1] They were met by Mr. Guadalupe who admonished them not to say anything to anyone about the bombing and gave them a card bearing the name of his attorney. He instructed the boys if they were questioned by the police they should say nothing and contact the attorney. He also promised to pay them later "after things cooled down." Mr. Guadalupe was subsequently arrested, indicted, and this matter was brought to trial.

 Defendant argues the evidence was insufficient to convict him on either count. He contends:

Read in the light most favorable to the government, Mr. Guadalupe submits the evidence shows, at most, Mr. Guadalupe was a legitimate businessman who in-

---

1. Although the tape recorder did not function, their conversation was overheard contempora-

neously by an officer.

dulged in frustrated musings in the presence of a young man eager for his approval. That young man, Sean Gordon, immediately engaged his friend, Bart Smiley, who was anxious for money and prone to telling tales. Bart. Smiley turned to his roommate, Michael James, whose propensity for dangerous hobbies gave him ready access to the ingredients for a bomb. There was no evidence of a common meeting of the minds among these purported conspirators and Mr. Guadalupe. Rather, the evidence indicate [sic] the plan began and was set in motion by Sean Gordon, acting through Bart Smiley and Michael James.

Our review of the record, which has disclosed facts ignored by the defendant, suggests this contention is supported only .by defendant's opinion of the credibility of his coconspirators. Our view, unhampered by that bias, *United States v. Richard,* 969 F.2d 849, 856 (10th Cir.1992) (an appellate court is bound to the rule that resolution. of the credibility of witnesses is for the jury), discloses the evidence we have outlined is more than sufficient to sustain the verdicts.

We review the record only to determine whether both the direct and circumstantial evidence, together with the reasonable inferences that can be drawn from that evidence, when viewed in a light most favorable to the government, would permit a reasonable jury to find the defendant guilty beyond a reasonable doubt. *United States v. Conner,* 972 F.2d 1172, 1173 (10th Cir.1992). Applying that standard, we conclude the evidence of defendant's guilt is substantial.

■ Count I of the indictment charges defendant with conspiring with Michael James and another to blow up Dr. Chiaf's office contrary to the provisions of 18 U.S.C. § 371. There are five elements which must be established for a conviction under that section: (1) an agreement, (2) to break the law, (3) an overt act, (4) to further the conspiracy, and (5) willful participation in the conspiracy by the defendant. *United States v. Nall,* 949 F.2d 301, 305 (10th Cir.1991).

In this case, the government's direct evidence established that defendant had conversations with Michael James and Bart Smiley in which he asked them to bomb the office of Dr. Chiaf. Contrary to his claim, defendant's participation went beyond merely suggesting the bombing. He gave specific directions of how the bombing was to be accomplished and ordered an incendiary accelerant be used to start a fire. He also viewed a bomb, and according to the inferences drawn from his statement "[t]hat ought to work," indicated his approval of the type of device to be used. The direct evidence further established that in exchange for the acts of Michael James and Bart Smiley, defendant agreed to pay them a sum of money. It is not contested that James and Smiley built and detonated the bomb and that the detonation was in violation of 18 U.S.C. § 844(i). Thus, we are satisfied the overt acts charged in the indictment, the agreement, its illegality, and defendant's willing participation were established · by the government, and the evidence was sufficient to support the verdict on the first count.

Moreover, as defendant admits, the evidence on Count I was inexorably intertwined with Count II. That count charged defendant violated 18 U.S.C. § 2 by causing Michael James and another to commit an act contrary to 18 U.S.C. § 844(i). Suffice that the evidence we have already discussed establishes the fact of defendant's guilt on the charge.

■ Defendant next contends the district court gave a flawed instruction that misled the jury on the issue of conspiracy. In an instruction defining the crime of conspiracy and its elements, including proof of an overt act, the court, in part, instructed:

In this case, there is no dispute that the fourth overt act charged in the indictment occurred, that is that Michael Bryant James placed a pipe bomb at the front door of the Chiaf Clinic and then detonated the explosive device. Thus, the question before you is whether that overt act was committed to further some object or purpose of a conspiracy of

which the defendant was knowingly and willfully a member.

The instruction is factually erroneous because it was not Michael James, but Bart Smiley, who placed and detonated the bomb. This error was called to the attention of the district court at the defendant's first opportunity, but unfortunately, that opportunity was not presented until *after* the jury was instructed.

■ Upon our inquiry at oral argument, we were advised by both counsel, as officers of the court, it is the standing practice of the court that the final draft of the instructions is not presented to the attorneys until just before the charge is rendered.[2] As a result of this practice, counsel must wait until the charge is actually delivered before knowing its final form.

To the extent the advice given us at oral argument is an accurate statement of the practice, we must disapprove. Fed. R.Crim.P. 30 is less than definitive on the timing, but it unequivocally states: "The court shall inform counsel of its proposed action upon the [requested instructions] prior to their arguments to the jury." The rule, however, leads to difficulty because the court that instructs before closing argument technically complies with the rule if it allows counsel to object after delivery of the charge. Unfortunately, that approach deprives both the court and counsel of the purpose behind raising objections to the instructions.

Objections have at least two purposes. One, obviously, is to perfect issues for appeal. Another, and even more important purpose, is to aid the court in giving a proper charge in the first instance. That purpose cannot be achieved, however, if counsel are not given an opportunity to raise meaningful objections to the charge that is finally delivered. Thus, the only logical way in which the court can carry out this function is to deliver a final copy of the charge to counsel and permit them to raise objections *before* instructing the jury whether the charge is to be delivered prior to or following closing arguments.

That leaves us with consideration of the issue on appeal. The trial court immediately discovered the obvious mistake, but determined the instruction was not objectionable because James and Smiley "came together and together they did whatever was done there at the front door of the clinic." However, defendant argues because Michael James was the only conspirator named in the indictment, the effect of the instruction was to tell the jury that James was in fact a conspirator, thus relieving the jury of the burden of having to make that finding.

There are two reasons why that argument is not persuasive. First, another instruction given by the court makes clear the jury had to separately determine who the conspirators were. Instruction 25 advised the jury:

> Before the jury may find that a defendant, *or any other person*, has become a member of a conspiracy, the evidence in the case must show beyond a reasonable doubt that the conspiracy was knowingly formed, and that the defendant, *or other person* who is claimed to have been a member, willfully participated in the unlawful plan, with the intent to advance or further some object or purpose of the conspiracy.

(emphasis added). The juxtaposition of this instruction and that to which defendant objects offsets the inference he claims. Indeed, the two instructions read together make clear the jury had to independently determine Mr. James was a conspirator.

Second, the evidence of the fact of Mr. James' participation in the conspiracy was so ample we are quite certain the jury was not misled. Thus, to the extent the instruction was factually erroneous, the error was harmless because, even if read as defendant suggests, the instruction merely states what the evidence made abundantly obvious.

■ Defendant raises two issues relating to his sentence. First, he contends the district court erred in enhancing his sen-

---

**2.** That practice is not set forth in the court's local rules.

tence by two levels for being an organizer, manager, or leader. U.S.S.G. § 3B1.1(c). Relying on Application Note 3, U.S.S.G. § 3B1.1, comment. (n.3), and his contention he was responsible only for "engaging in exaggerated, inappropriate comments in front of teenagers," defendant argues he was not subject to the enhancement because he only suggested the offense. We disagree.

Not only did the district court have the trial evidence, it also took additional testimony from both sides at the sentencing hearing. After listening to the defendant, the court chose to disbelieve him and find he was a manager of a criminal activity involving less than five persons. That finding is reviewed under a clearly erroneous standard to determine whether it is supported by a preponderance of the evidence. *United States v. Backas*, 901 F.2d 1528, 1529 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 190, 112 L.Ed.2d 152 (1990). On the basis of the record we cannot say the finding is clearly erroneous. *United States v. Morgan*, 936 F.2d 1561, 1573–74 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992).

■ Mr. Guadalupe also argues the court erred in enhancing his sentence by two levels for obstructing justice by threatening Michael James while in custody before trial. Although James did not testify at sentencing, his statement was contained in the presentence report. James stated that defendant told him "he and his family would 'never live.'" Defendant simply testified, without further elaboration, he did not make the statement.

In the face of conflicting facts, the trial court found that the defendant had indeed made the statement. We therefore assume the court simply decided the defendant's denial was incredible.

Our standard of review gives deference to the trial court in matters concerning credibility. In *United States v. Beaulieu*, 900 F.2d 1531, 1535 (10th Cir.), *cert. denied*, 497 U.S. 1009, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990) (citing 18 U.S.C. § 3742(e)), we stated, "we must 'give due regard to the opportunity of the district court to judge the credibility of the witnesses....'" Given the deference we are required to give the court's determination, we see no error in the imposition of the enhancement.

■ Finally, defendant attempts to argue he was denied his right to effective assistance of counsel. That issue, however, is not justiciable on direct appeal except in rare cases where the record is sufficiently complete to allow proper appellate review. *Beaulieu v. United States*, 930 F.2d 805, 807 (10th Cir.1991). This is not one of those rare cases; therefore, we refuse to consider the issue, but without prejudice to subsequent review in the proper context.

■ Defendant has brought before us a pro se motion for leave to file a supplemental brief. Because he is represented by thoroughly competent counsel, his motion is out of order and DENIED, and the judgment of the district court is AFFIRMED.