**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 2 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

AUBREY MURPHY, Sr.,

Defendant-Appellant.

No. 98-6341
(W.D. Okla.)
(D.Ct. No. CR-97-137-L)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL**, and **LUCERO**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

Appellant Aubrey Murphy, Sr., appeals the sentence imposed by the district

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

court following his guilty plea to one count of conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846. The district court applied a three-level enhancement under United States Sentencing Guideline § 3B1.1(b) for Mr. Murphy's supervisory role in the conspiracy to distribute cocaine, and declined to apply the "safety valve" allowed under U.S.S.G. § 5C1.2. On the government's motion, the district court allowed a downward departure under U.S.S.G. § 5K1.1, based on Mr. Murphy's substantial assistance in the case, thereby reducing his sentence to 222 months from the sentencing guideline range of 235-293 months.

On appeal, Mr. Murphy argues: (1) the evidence does not support the district court's determination he supervised either his wife or another co-defendant for the purposes of U.S.S.G. § 3B1.1; (2) he received no notice the government intended to apply the § 3B1.1 enhancement to his alleged supervision of his wife; (3) the district court erroneously failed to apply the "safety valve" under U.S.S.G. § 5C1.2 in computing his sentence; (4) the district court abused its discretion in not considering his age, physical infirmity, susceptibility to abuse, and lack of prior criminal record in departing downward; (5) the district court, in determining the extent of the downward departure, impermissibly compared the disparity of his sentence with his much younger, female co-defendants' sentences;

and (6) the district court impermissibly compared these sentences without giving him notice or an opportunity to "rebut this evidence."

## I. Section 3B1.1(b) Enhancement

In order to impose a three-level enhancement under U.S.S.G. § 3B1.1(b), the sentencing court must find by a preponderance of the evidence that Mr. Murphy managed or supervised a criminal activity which involved five or more participants or was otherwise extensive. *See* U.S.S.G. § 3B1.1(b); *United States v. Wacker*, 72 F.3d 1453, 1476 (10th Cir. 1996); *United States v. Guadalupe*, 979 F.2d 790, 795 (10th Cir. 1992). A manager or supervisor must possess decision-making authority or control over a subordinate. *United States v. Roberts*, 14 F.3d 502, 524 (10th Cir. 1993). We review the district court's findings of fact for clear error, giving deference to the district court's application of the Sentencing Guidelines to the facts. *Wacker*, 72 F.3d at 1476. Questions of law regarding the application of these guidelines are reviewed *de novo*. *Id.*

While Mr. Murphy does not contest the district court's finding the criminal activity involved five or more participants, he asserts the record does not support the district court's finding he supervised co-defendant Adrian Satchell during the course of the conspiracy. We disagree. The evidence presented and considered

-3-

by the district court shows Mr. Satchell acted as a drug courier, transporting multi-kilogram quantities of cocaine to Mr. Murphy in Oklahoma City from Mr. Murphy's California supplier, Edward McFadden. Testimony from the sentencing hearing shows that while Mr. McFadden acted as a leader and organizer of the cocaine organization, Mr. Murphy managed the Oklahoma City end of the conspiracy involving thirteen other members. During this conspiracy, Mr. Murphy (1) instructed Mr. Satchell when to go to California and other locations to pick up cocaine, (2) provided him the names and telephone numbers of persons for Mr. Satchell to contact, (3) directed him when to travel to pick up money from cocaine sales, and (4) instructed him when to deliver the money to Mr. McFadden. In addition, on several occasions Mr. Murphy made transportation arrangements, such as renting vans for Mr. Satchell to use during his trips. Based on this testimony, the district court found Mr. Murphy acted as more than "simply a middleman or wholesaler of cocaine base," but as "leader of the Oklahoma City branch of [the cocaine] conspiracy" who "exercised control" and "directed the actions of Adrian Satchell on a number of occasions" during the period covering the enhancement.

Mr. Murphy contends he could not supervise Mr. Satchell because he received payment from Mr. McFadden, and therefore acted as his employee. He

also claims he "only passed along information" to Mr. Satchell from Mr. McFadden, who found it more convenient to contact Mr. Murphy because he knew his phone number.

While the evidence shows Mr. McFadden advised Mr. Murphy of when and how much cocaine was available, it also shows Mr. Murphy did more than merely convey this information to Mr. Satchell.  In addition, Mr. Murphy gave Mr. Satchell instructions on how to proceed based on this information.  Thus, Mr. Murphy was much more than just a conduit for communication.

Alternatively, regardless of what instructions Mr. McFadden gave Mr. Murphy concerning Mr. Satchell, or who paid him, the record clearly shows Mr. Murphy is the individual who personally instructed Mr. Satchell on his courier activities in a conspiracy involving *all* of them, and Mr. Satchell followed those instructions.  This demonstrates Mr. Murphy possessed the requisite decision-making authority or control needed over a subordinate to establish his supervision of another.  *See Roberts*, 14 F.3d at 524.  For these reasons, we conclude the district court did not err in finding by a preponderance of the evidence that Mr. Murphy supervised Mr. Satchell for the purposes of a U.S.S.G. § 3B1.1(b) three-level enhancement.

Having determined the record supports the § 3B1.1(b) enhancement for supervision of Mr. Satchell, we need not determine whether the record supports a similar enhancement for Mr. Murphy's alleged supervision of his wife, Davi Murphy, or if he received sufficient notice of such an enhancement. In order for Mr. Murphy to receive an adjustment under § 3B1.1(b), it is sufficient to show he managed or supervised only one other participant. *Cf. United States v. Johnson*, 4 F.3d 904, 917-18 (10th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994).

## II. Section 5C1.2 Safety Valve Provision

In a related argument, Mr. Murphy maintains the district court failed to apply the "safety valve" provision under U.S.S.G. § 5C1.2. This provision requires the district court to impose a sentence without regard to any statutory minimum sentence if the defendant meets certain criteria. *See* U.S.S.G. § 5C1.2. In order to apply the safety valve provision, the defendant must not be a "manager, or supervisor of others in the offense." U.S.S.G. § 5C1.2(4). Because Mr. Murphy supervised Mr. Satchell's activities in the conspiracy, the safety valve provision does not apply.

## III. Downward Departure

A district court may depart from the Sentencing Guidelines on a motion by

the government stating the defendant "provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. In this case, Mr. Murphy provided assistance by sharing information which led to guilty pleas from at least seven of the co-defendants involved in the conspiracy, and by offering to testify against other co-conspirators at trial. Consequently, the government moved for a U.S.S.G. § 5K1.1 downward departure. After admonishing Mr. Murphy for supplying cocaine to the very same individuals he helped convict, and who are mostly young mothers and members of his "family," the district court reluctantly granted the government's U.S.S.G. § 5K1.1 motion and reduced Mr. Murphy's sentence to 222 months from the guideline range of 235 to 293 months.

Nevertheless, Mr. Murphy argues the district court erred in refusing to apply a further downward departure based on his age, physical infirmity, susceptibility to abuse, and lack of prior criminal record. We cannot consider his argument, as this court lacks jurisdiction to review a district court's discretionary decision to grant a downward departure or determine the extent of a departure. *See United States v. McHenry*, 968 F.2d 1047, 1049 (10th Cir. 1992). *See also United States v. Holsey*, 995 F.2d 960, 963 (10th Cir. 1993) (determining we lack jurisdiction to consider the district court's discretionary refusal to depart

downward because of a defendant's age or poor health).

Hoping to overcome this jurisdictional hurdle, Mr. Murphy poses an alternative argument with constitutional ramifications. Specifically, he claims the district court based its refusal to depart downward on an impermissible comparison of Mr. Murphy's sentence with the sentences of his much younger, female co-defendants. He argues the court's consideration of his age and sex violates due process and equal protection guarantees, and the Sentencing Guidelines, which specifically enumerate certain "forbidden factors" the sentencing judge must not consider when reviewing a request for a downward departure. These forbidden factors include race, sex, national origin, creed, religion, and socio-economic status. *See* U.S.S.G. § 5H1.10. If the sentencing court relies on a forbidden factor, the defendant may appeal its application of the Sentencing Guidelines as a violation of law. *See United States v. Garcia*, 919 F.2d 1478, 1479-80 (10th Cir. 1990).

In reviewing Mr. Murphy's argument, we must look to the context of the statements made by the district court judge at the sentencing hearing. The judge stated in part:

> I must say that it was very difficult for the Court to sit here
> and listen to the pleas of several of those persons who were young

mothers in their early twenties, who were going away for seven or eight years to a federal penitentiary because they were selling drugs that you had distributed to them....

...

And that you then want the Court to sentence you to a far lesser sentence because you were sitting here willing to testify against [your] own family members and these persons, all of whom you ... and your wife got involved in the drug business....

...

I honestly could not live with myself, Mr. Murphy, if you served one month less than any of these persons that you have gotten involved in this drug distribution and drug ring. You were far older and far wiser than most of them....

I am going to grant the Government's motion for downward departure. Pursuant to Section 5K1.1, I find that you have provided substantial assistance in this investigation, and in the prosecution of others involved in this offense. And therefore, I will depart from the guideline range. But it's very reluctantly.

Contrary to Mr. Murphy's contentions, the district court did not impermissibly determine that because of Mr. Murphy's age and sex he did not qualify for a downward departure. Rather, the district court commented on the reprehensible nature of Mr. Murphy's and his wife's conduct in involving young mothers with infant children in a drug conspiracy. Moreover, the district court's inclusion of Mr. Murphy's wife in its admonition clearly shows the district court did not consider gender relevant in finding the conduct of both Mr. and Mrs. Murphy reprehensible. A fair reading of the district court's statements shows the

judge, in admonishing Mr. Murphy, focused not on Mr. Murphy's sex or age, but on his criminal conduct and abhorrent involvement of young mothers in the drug conspiracy. It is most likely that faced with a young female defendant who similarly involved young mothers in a drug conspiracy, one could find such conduct equally abhorrent.[1] The district court's reference to Mr. Murphy's being "far older and far wiser" than his co-defendants goes more to his knowing better than to involve others less worldly and more vulnerable than himself. We find the district court did not impermissibly consider Mr. Murphy's age and sex in a way prohibited by the Sentencing Guidelines and the due process and equal protection provisions of the Constitution. The sentencing judge properly exercised his discretion and departed downward. For these reasons, we conclude we lack jurisdiction to review the extent of the district court's downward departure.

As for the disparity between Mr. Murphy's sentence and those of his co-

---

[1] Besides his constitutional arguments, Mr. Murphy claims the record does not show he recruited or involved any of the young co-defendants in the conspiracy as stated by the district court when considering the downward departure. However, the record clearly shows Mr. Murphy led the Oklahoma conspiracy involving these young co-defendants, and sold and distributed cocaine to them. This alone shows he in some way involved them for the purposes of the cocaine conspiracy. Moreover, because the record shows the same judge saw and sentenced most of the individuals involved in the co-conspiracy, he possessed first-hand knowledge of their involvement with Mr. Murphy in the conspiracy.

defendants, we likewise lack jurisdiction to review the extent of his downward departure. *United States v. Fisher*, 3 F.3d 456, 464 (1st Cir. 1993).[2] Moreover, "disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Maden*, 114 F.3d 155, 159 (10th Cir.) (internal quotation marks and citation omitted), *cert. denied*, 118 S. Ct. 226 (1997). In this case, the record shows the same judge saw and sentenced most of the individuals involved in the conspiracy. Therefore, he obtained first-hand knowledge of their involvement in the conspiracy, as compared with Mr. Murphy's involvement. In addition, the disparity in the co-conspirators' sentences is clearly attributable to at least one factor; *i.e.*, Mr. Murphy's management or supervision of at least one other during the conspiracy.

For these reasons, the sentence imposed by the district court is **AFFIRMED**.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

[2] For the same reason, we decline to review Mr. Murphy's claim the district court improperly failed to give him notice of its consideration of the sentencing disparities.