**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 8 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES NEIBERGER; DANFORD
ELDRIDGE; PAUL GARDNER;
TERENCE JACOBS,

     Plaintiffs-Appellees,

v.

ROBERT HAWKINS, Superintendent of
the Colorado Mental Health Institute at
Pueblo; GARRY TOERBER, Associate
Manager for the Office of Direct Services
of the Department of Human Services;
ROBERT L. HAWKINS, individually;
GARRY TOERBER, individually,

     Defendants-Appellants.

  and

COLORADO DEPARTMENT OF
HUMAN SERVICES; COLORADO
MENTAL HEALTH INSTITUTE AT
PUEBLO,

     Defendants.

No. 99-1535

(D.C. No. 99-B-1120)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

---

[*]  This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order

Before **BRISCOE, HOLLOWAY,** and **POLITZ,**[**] Circuit Judges.

Robert Hawkins and Garry Toerber appeal the district court's denial of their motion to dismiss, contending that the court erred in denying them qualified immunity as individuals and in rejecting their contention that plaintiffs failed to comply with the provisions of the Colorado Governmental Immunity Act ("CGIA"). For the reasons assigned we affirm.

## BACKGROUND

Plaintiffs are patients committed to the Institute of Forensic Psychiatry at the Colorado Mental Health Institute at Pueblo ("CMHI-P"). All were committed indefinitely after criminal proceedings found them "not guilty by reason of insanity."[1] The Colorado Department of Human Services ("CDHS") controls CMHI-P. Toerber is the Deputy Manager for the Office of Direct Services of CDHS. Hawkins is the Superintendent of CMHI-P.

Plaintiffs' action challenges their ward assignments, treatment options and conditions of confinement. They allege a "continuous pattern of substandard care,"

---

and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Henry A. Politz, United States Court of Appeals for the Fifth Circuit, sitting by designation.

[1] See COLO. REV. STAT. § 16-8-105 (1990).

-2-

focusing on the lack of individualized treatment plans, their inability to participate in treatment, and the threatened administration of psychotropic medications. They also complain of undue restraints, inappropriate sanitation, poor medical care and a disregard for personal safety. They invoke Colorado's Care and Treatment of the Mentally Ill Act,[2] 42 U.S.C. § 1983, the Americans with Disabilities Act,[3] and common law negligence rules. They urge these claims in a putative class action with other individuals committed to CMHI-P. The district court dismissed various claims on grounds of sovereign immunity, but declined to dismiss claims against the defendants as individuals, denying appellants' 12(b)(6) motion with respect to qualified immunity under § 1983, and finding that the CGIA did not preclude the common law negligence claim. This interlocutory appeal by Toerber and Hawkins questions the district court's denial of their motion to dismiss based on qualified immunity and the CGIA.

## ANALYSIS

### A.    Qualified Immunity

The rejection of a defendant's qualified-immunity defense, "to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."[4] Specifically, we have held that

---

[2]  COLO. REV. STAT. §27-10-101 et. seq. (1990).

[3]  42 U.S.C. § 12101 et. seq. (1995).

[4]  Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

"[i]f the defendant argues that she is entitled to qualified immunity under the plaintiff's version of the facts because the plaintiff has not demonstrated a violation of clearly established law, this Court may properly exercise jurisdiction over an interlocutory appeal."[5] Appellants herein advance that contention.

To accept a claim of qualified immunity, we first must decide whether the plaintiffs sufficiently alleged that the defendants violated a statutory or constitutional right, and if so, whether that right was clearly established and a reasonable person in the defendants' position would have known that his or her conduct violated that right.[6] We review <u>de novo</u> a lower court's denial of qualified immunity because an appeal of such order presents issues of law.[7] In the context of a 12(b)(6) motion to dismiss, our review of the qualified immunity defense is limited to the pleadings.[8] In assessing the pleadings, we construe the allegations in the complaint, and any reasonable inferences to be drawn therefrom, in favor of the petitioner.[9] We do so, noting our recent rejection of the

---

[5] <u>DeAnzona v. City and County of Denver</u>, 222 F.3d 1229, 1233-34 (10th Cir. 2000) (citing <u>Johnson v. Martin</u>, 195 F.3d 1208, 1214 (10th Cir. 1999)).

[6] <u>Tonkovich v. Kansas Bd. of Regents</u>, 159 F.3d 504, 516 (10th Cir. 1998).

[7] <u>Romero v. Fay</u>, 45 F.3d 1472 (10th Cir. 1995); <u>see</u> <u>also</u> <u>Mick v. Brewer</u>, 76 F.3d 1127 (10th Cir. 1996) (discussing principle that a district court's denial of qualified immunity is appealable to the extent it presents issues of pure law).

[8] <u>Gagan v. Norton</u>, 35 F.3d 1473, 1475 (10th Cir.1994).

[9] See <u>Sutton v. Utah State School for the Deaf and Blind</u>, 173 F.3d 1226, 1236 (10th Cir. 1999).

heightened pleading standard in the context of a qualified immunity defense.[10]

### 1.    Violation of a Constitutional Right

Initially we consider whether the plaintiffs have asserted the violation of a constitutional right.[11]  On its face their pleadings implicate a constitutional right.  In Youngberg, the Supreme Court held that a committed individual "enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests."[12]  There is no challenge to the plaintiffs' status as committed individuals.  The right discussed in Youngberg is therefore pertinent herein.[13]  Our inquiry at this stage turns on whether the allegations related to the conditions and treatment at CMHI-P, if proven, would constitute a violation of the right outlined in Youngberg.

While this presents a close question, we ultimately conclude that plaintiffs' second amended complaint sufficiently alleges a violation of a clearly established constitutional

---

[10]  Currier v. Doran, – F.3d – , 2001 WL 202045 (10th Cir. March 1, 2001).

[11]  Siegert v. Gilley, 500 U.S. 226, 232 (1991).

[12]  Youngberg v. Romeo, 457 U.S. 307, 324 (1982).

[13]  See also Washington v. Harper, 494 U.S. 210, 227 (1990) (finding that patients  have a due process interest implicated by the unconsented administration of antipsychotic medications absent a finding that they are a danger to themselves or others); Walters v. Western State Hosp. 864 F.2d 695, 700 (10th Cir. 1988) (discussing patients' liberty interest in being forcibly detained without access to outside family or friends).

right.  As above noted, mere conclusionary allegations without specific facts will not defeat the defense of qualified immunity.  The amended complaint passes muster when tested against this requirement.

Neiberger complains of a "continuous pattern of substandard care," including denial of his right to "refuse treatment that is inappropriate for his needs," deprivation of a "physician-ordered, nutritionally adequate vegetarian diet," the forced discontinuance of an educational program, and interference with his "visitation and involvement of his family in his care."  Eldridge complains of being "penalized and retaliated against for refusing generic group therapy," being "repeatedly subjected to restraints and seclusion when he was neither dangerous to himself or others," "prevented from conferring with legal counsel and maintaining possession of his legal files," and the disregard of a court order that he be allowed to continue his education.

Gardner alleges misdiagnosis and threats of involuntary psychotropic drugs, being subjected to body searches by female staff contrary to hospital policy, and denial of meaningful or timely response to grievances filed in accordance with hospital rules. Finally, Jacobs asserts misdiagnosis of his condition due to personal conflicts with one named doctor, that he remains in the maximum security unit despite findings by another named doctor, that he has no behavior conflicts or evidence of any form of mental illness, the lack of any formalized grievance system in the forensic unit, placement in seclusion for challenging inappropriate treatment, unlawful "pat-frisks" by female staff, and

placement in an unsafe environment with a patient who had previously threatened him.

Finally, plaintiffs cite "consultant reports commissioned by defendant Colorado Department of Human Services." These reports detail the overcrowding and understaffing at CMHI-P, the lack of training of staff in areas such as suicide prevention and the treatment of the "severely mentally ill population served by the maximum-security unit," and "dangerously unsafe" conditions. Plaintiffs also discuss surveys by the Health Care Financing Administration finding "serious staffing and other deficiencies at CMHI-P which substantially limit the hospital's capacity to provide adequate care."

While these allegations do not contain specific dates and times, or intimate details of each alleged infraction, they do describe adequately the various incidents and conduct that constitute the deprivation. The allegations do more than merely "identif[y] a clearly established right and then alleg[e] that the defendant has violated it."[14] In addition to stating that defendants provided "insufficient care" or "poor treatment", the allegations note problems with the care, such as punishment for lodging complaints, inability to visit with family or friends, and invasive searches by staff of the opposite sex. On balance, we find sufficient factual allegations as to the constitutional violation issue. Plaintiffs' remaining Section 1983 claims do not state a violation of a clearly-established

_____

[14] Sawyer v. County of Creek, 908 F.2d 663, 665 (10th Cir. 1990).

-7-

constitutional right.[15]

## 2.    Clearly Established Right

Our second inquiry focuses on whether the right allegedly violated is "sufficiently clear that a reasonable official would understand that what he is doing violates that right."[16] We find that plaintiffs have met this second requirement. Both Toerber and Hawkins serve in high ranking positions within the health care administration in the state of Colorado. A reasonable person in such a position should know that committed individuals enjoy a constitutionally protected interest in conditions of reasonable care and safety, and that allowing or implementing policies resulting in the acts alleged in the complaint would violate that interest. We therefore conclude that plaintiffs' constitutional rights were clearly established and that reasonable persons in the defendants' positions should have and would have known that their conduct violated that right.[17]

Defendants also urge dismissal by reading the plaintiffs' complaint as based on

---

[15] See Second Am. Compl., App. at 32 ¶¶ 81-83 (alleging violations of due process rights to individualized treatment plans, to have family participation in treatment and care, to confinement in the least restrictive environment, and to be informed of potential risks and benefits of voluntarily-taken psychotropic medications).

[16] Anderson v. Creighton, 483 U.S. 635, 640 (1987).

[17] See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 516 (10th Cir. 1998).

respondeat superior liability rather than actual participation in the violation. We are not persuaded. The complaint contains sufficient facts for establishment of defendants' personal liability. There are several allegations relating to defendants' knowledge of the improper treatment at CMHI-P, their acquiescence in such treatment, and their supervisory roles over the implementation and administration of care at CMHI-P.[18] These allegations do not focus on respondeat superior liability but, rather, would place responsibility for the alleged constitutional violations on the defendants' directly in light of their participation in the establishment of plaintiffs' and other patients' treatment programs and overall living conditions at CMHI-P.

We conclude that the factual allegations in plaintiffs' complaint are sufficient to survive defendants' 12(b)(6) motion to dismiss.

## B. Negligence

---

[18] As noted by the district court, plaintiffs' second amended complaint includes allegations that Hawkins "has been and continues to be personally aware of the conditions at CMHI-P and the lack of adequate medical and psychiatric care and treatment provided to the patients at CMHI-P" (par. 33), that Toerber is "personally aware of the conditions at CMHI-P and the inadequate medical and psychiatric care and treatment provided to the patients held at CMHI-P" (par. 35), that defendants have operated the CMHI-P in a manner that consciously and systematically deprives plaintiffs of appropriate care (par. 59), and finally that both defendants had "actual notice from planning documents developed and published by CMHI-P that the level of staffing in the forensic unit was not adequate . . . to provide the minimally adequate treatment guaranteed by the United States Constitution. Despite this knowledge, Defendants, including Defendants Toerber and Hawkins, failed to take reasonable actions to maintain sufficient levels of trained professional staff . . .." (par. 63).

Defendants also appeal the district court's ruling denying their motion to dismiss the claim for common law negligence. Under Colorado law, because defendants are employees of a state entity, tort actions must comply with the Colorado Governmental Immunity Act.[19] The district court held that governmental immunity was waived under the act because the complaint alleged negligence in the operation of a public hospital.[20] Defendants assert various grounds for challenging the district court's decision, none of which persuades us that the district court's order was in error.

At the outset, we note our agreement with the district court that plaintiffs' complaint contains sufficient allegations of individual negligence. Respondeat superior liability is not implicated. Despite defendants' urgent argument, we find no requirement that a plaintiff show willful and wanton conduct on behalf of a defendant when the alleged negligence involves the operation of a hospital. The statute at issue provides this exemption.[21]

Finally, we conclude that the plaintiffs sufficiently complied with the CGIA notice requirements. They filed a certificate of review[22] which adequately complies with the

---

[19] See COLO. REV. STAT. § 24-10-102 (1990) (containing "all the circumstances under which the state, any of its political subdivisions, or the public employees of such public entities may be liable in actions which lie in tort").

[20] See COLO. REV. STAT. § 24-10-106(b) (1990).

[21] COLO. REV. STAT. § 24-10-118(2)(a) (1990).

[22] The district court discussed the certificate in light of the requirements in § 24-10-10. This section requires that plaintiffs obtain notices containing (1) the

-10-

requirements of C.R.S. § 13-20-602(3)(a).[23]  Colorado law does not require plaintiffs to reference the Not Guilty By Reason of Insanity statute[24] in their certificate, as the duties they refer to in their complaint stem from the Treatment Act.  Further, as noted by the district court, the Colorado Supreme Court has held that a plaintiff need only substantially comply with the CGIA's notice provisions.[25]  This comports with a recent opinion by that court which concludes that the CGIA's waiver provisions receive deferential construction in favor of injured victims and its "immunity provisions are subject to strict construction."[26]  We find the district court's reasoning sound and affirm its denial of defendants' motion to dismiss.

In conclusion, we find that plaintiffs have alleged sufficient facts to rebut

name and address of complainant and his attorney, (2) a concise statement of facts underlying the claim, including the date, time, place, and circumstances of the act, omission, or event complained of, (3) the name and address of any public employee involved, (4) a concise statement of the nature and extent of the injury, and (5) a statement of the monetary damages requested.  Plaintiffs' certificate met these requirements.

[23] This section requires that attorney's declare that they have consulted with a person who has expertise in the area at issue and that such expert has reviewed the case and concluded that the filing of the claim does not lack substantial justification.  See COLO. REV. STAT. § 13-20-602(3)(a)(I) & (II) (1990).  The statute does not require the naming of any particular licensed professional because the instant complaint charges the defendants with negligence.

[24] See COLO. REV. STAT. § 16-8-101 et. seq. (1990).

[25] Woodsmall v. Regional Transport. Dist., 800 P.2d 63, 69 (Colo. 1990).

[26] Walton v. State, 968 P.2d 636, 643 (Colo. 1998).

-11-

defendants' assertion of qualified immunity and that their notice complied with the requirements of the CGIA.  The judgment appealed is AFFIRMED.

Entered for the Court

Henry A. Politz
Circuit Judge