**Debra SMITH, et al., Plaintiffs,**

v.

**James BARBER, et al., Defendants.**

**No. CIV.A.01–2179–CM.**

United States District Court,
D. Kansas.

March 22, 2002.

---

**50.** *Id.* at 1298.

**51.** *Id.* at 1299.

Lee R. Barnett, Keith E. Renner, Barnett & Renner, PA, Auburn, KS, Kenneth D. Winford, Tenth Judicial District Public Defender, Olathe, for Plaintiffs.

Allen G. Glendenning, Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., Great Bend, KS, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This case arises out of the search of plaintiffs' homes and the seizure of their persons in response to concerns that certain plaintiffs planned an armed attack on Labette County High School (LCHS) in Altamont, Kansas. Following the events giving rise to this action, plaintiffs filed suit against defendant City of Altamont, Kansas ("City") and defendant James Barber, the City of Altamont's Chief of Police in both his official and individual capacities, under 42 U.S.C. § 1983. Plaintiffs allege that these defendants, together with other named defendants, violated their rights under the Fourth Amendment to be free from unreasonable search and seizure and their rights under the Fourteenth Amendment to receive both procedural and substantive due process. In addition, plaintiffs have filed several related state law claims against defendants.

Pending before the court is defendant James Barber and defendant City of Altamont's joint Motion to Dismiss (Doc. 6). As set forth in detail below, defendant Barber and City's motion is granted in part.

● **Background**[1]

On December 17, 1999, certain defendants learned of an attack on LCHS allegedly planned by plaintiffs Daniel Smith, Josh Traxson, Jestin McReynolds, Aaron Spencer, and Brian Vail (hereinafter referred to as the "five student plaintiffs"). On December 17, two fellow students of these five student plaintiffs at LCHS informed a teacher of "false threats of a planned shooting at the high school by Daniel Smith, Jestin McReynolds, Josh Traxson, Aaron Spencer, and Brian Vail." (Pls.' Compl. at ¶ 57). Specifically, on December 17, one of these informing students told a group "about an armed attack and gave specific details about the attack." (*Id.* ¶ 58). The group included defendants Greg Cartwright (LCHS Principal), James Barber (City of Altamont's Chief of Police), William Blundell (Labette County Sheriff), Scott Higgins (Labette County Detective), C.W. Davis (Labette County Undersheriff), and Dennis Wilson (U.S.D. 506 Superintendent); the informing student's parents; and other non-parties. This informing student indicated that the five student plaintiffs "had formulated a plan to make a well coordinated attack at Labette County High School on Monday, December 20, 1999." (*Id.*). The informing student also reported that the five student plaintiffs "had drawn up a map of the school and how they would make their attack. [The informing student] indicated that the boys had laid out black clothing, a 9 mm handgun, an SKS rifle, a sawed off

shotgun, and several .22 caliber rifles and handguns in the room." (*Id.*). The informing student also indicated the five student plaintiffs intended to drive a car into the school.

Based on this information, certain defendants drafted affidavits used to obtain several search warrants. On December 18, at 1:30 a.m. the first search warrant was executed at plaintiff Debra Smith's home. Shortly thereafter "the other searches took place. Arrested and taken in for questioning to the Sheriff's office were: Daniel Smith, Josh Traxson, Jestin McReynolds, Brian Vail ... and Aaron Spencer. Fifty four members of the combined forces of the Kansas Bureau of Investigation, Kansas Highway Patrol, Labette County Sheriff's Office, Altamont Police Department and the Kansas State Fire Marshall's Office participated in the after midnight raids in which the five teenage boys, now known as the Altamont Five were arrested." (*Id.* ¶ 64).

Subsequently, the following Monday, "five Juvenile Complaint/Informations were executed and filed by defendant [Robert] Forer charging Daniel Smith, Josh Traxson, Jestin McReynolds, Bryan Vail and Aaron Spencer with eight counts of conspiring to commit First Degree Murder." (*Id.* ¶ 69). On January 19, 2000, plaintiff Mallory Sanders "was charged in a Juvenile Complaint ... with a Kansas Severity Level 6 felony charge of Aggravated Intimidation of a witness." (*Id.* ¶ 76).

Following much media attention, both local and national, the charges against the five student plaintiffs were dismissed on April 14, 2000. During their incarceration, the five student plaintiffs spent approximately 50 to 60 days confined, first at the South-

---

1. As noted below, the court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).

east Kansas Juvenile Detention Center in Girard, Kansas and then beginning in February 2000 they were moved to "the basement cell in Oswego." (*Id.* ¶ 82). Following their release they remained under house arrest, until the charges were dismissed.

Plaintiffs now assert that defendants' actions violated their rights and caused them to suffer damages. Relevant to the present motion, plaintiffs Debra, Daniel, and Kendra Smith; Billy, Alverda, and Jestin McReynolds; Josh Traxson; William, Denise, and Aaron Spencer; Gail and Bryan Vail; and Mallory Sanders assert under 42 U.S.C. § 1983 that defendant City and defendant Barber violated their Fourth Amendment right to be free from search and seizure (arrest) without probable cause (Counts 1 and 2). Plaintiffs Daniel Smith, Jestin McReynolds, Josh Traxson, Aaron Spencer, Bryan Vail, and Mallory Sanders also assert under § 1983 that defendants City and Barber violated their Fourteenth Amendment right to substantive due process (Count 7). In addition, several plaintiffs have raised state law claims of false arrest (Count 10), defamation (Count 11), and outrageous conduct (Count 12) against several defendants, including defendants City and Barber.

In the pending motion, defendant City first asserts that plaintiffs have failed to state a claim against it because there are insufficient allegations of a City custom or policy resulting in a constitutional deprivation. Defendant City further asserts that the allegations against defendant Barber, a City actor, are insufficient to establish liability on behalf of the City. In addition, defendant Barber asserts that he is entitled to qualified immunity from plaintiffs' constitutional claims raised in Counts 1, 2, and 7. Defendant Barber also asserts that plaintiffs' allegations in Counts 1, 2, and 7 are insufficient to state a claim for relief against him. Finally, both defendant City

and defendant Barber argue that where the federal claims raised against them are dismissed, no basis remains for the court to assert supplemental jurisdiction over the state law claims raised against them in Counts 10, 11, and 12. Accordingly, these defendants assert that all counts raised against them should be dismissed and that they should be dismissed as defendants from this action.

## I. Motion to Dismiss Standard

■ The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher*, 144 F.3d at 1304, or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Swanson*, 750 F.2d at 813. The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

● **Discussion**

● **Municipal Liability (City of Altamont, Kansas)**

Defendant City argues that plaintiffs have failed to sufficiently allege a cause of action against it. Specifically, defendants contend that because there are no allegations that a "specific policy of the city of

(sic) its police department resulted in a constitutional deprivation ... any claim against the city rises or falls on the question of whether James Barber has committed any violations of the plaintiffs' constitutional rights." (Defs.' Mem. at 2). Defendants appear to argue that because there are insufficient allegations of a City custom or policy, any municipal liability depends upon the sufficiency of the allegations against the City actor—defendant Barber. Moreover, defendants argue that the allegations against defendant Barber are insufficient to state a claim of liability against the City. The court agrees in part.

● **Municipal Liability Under 42 U.S.C. § 1983**

 A municipality may not be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Therefore, municipal liability may not be premised upon the employment of a person who has violated a plaintiff's federally protected rights. *Id.* Instead, a municipal wrong is one resulting from the enforcement of a municipal policy or custom.[2] *Id.* As such, to establish municipal liability, "a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir.1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

2. A "municipal custom or policy" may be established through an officially promulgated policy, *Monell*, 436 U.S. at 694, 98 S.Ct. 2018, a custom or persistent practice, deliberately indifferent training that results in the violation of a plaintiff's federally protected rights, *City of Canton, Ohio*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), or a single decision by an official with final decision-making authority, *City of St. Louis v.*

 A municipal policy may be established by a single edict or act by a municipal official with final policy making authority. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. Therefore, municipal liability may be premised upon a single decision by a municipal official with final policy making authority. *Praprotnik*, 485 U.S. at 123–24, 108 S.Ct. 915; *Pembaur*, 475 U.S. at 480–81, 106 S.Ct. 1292. Whether an official has policy making authority depends upon state law. *Praprotnik*, 485 U.S. at 124, 108 S.Ct. 915.

Here, plaintiffs allege that defendant Barber, in his position as Chief of Police of the City of Altamont, is "the policy setting official for the City of Altamont."[3] (Pls.' Resp. at 2). The court accepts as true for purposes of this motion plaintiffs' allegation regarding defendant Barber's policy making position. Moreover, defendants concede in their Reply brief that plaintiffs alleged that defendant Barber is "in a policy making position ... in the Complaint," and therefore, this "allegation is a 'given.'" (Defs.' Reply at 2).

 Construing the plaintiffs' complaint broadly, the court finds plaintiffs have alleged that their rights were violated by the City of Altamont through defendant Barber's actions in "setting policy" regarding the treatment of the plaintiffs and either carrying that policy out or directing others to do so. Therefore, plaintiffs have sufficiently alleged a "direct causal link between the custom or policy and the violation alleged." Accordingly, the court

*Praprotnik*, 485 U.S. 112, 123–24, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati*, 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

3. Plaintiffs assert that pursuant to Kansas State law, the chief of police may be a policy making official. (Pls.' Resp. at 4–5 (citing Kan. Stat. Ann. §§ 12–527, 14–201, 15–204 and City of Altamont Ordinances)).

finds plaintiffs have made sufficient allegations of a municipal custom or policy and of a direct causal connection between that custom or policy and the alleged violation. *Jenkins,* 81 F.3d at 993–94.

 However, despite these allegations, plaintiffs may fail to state a claim against the City where the allegations of constitutional wrongdoing by defendant Barber are insufficient to state a claim for relief. Where municipal liability is based upon the City's alleged responsibility for a policy making official's allegedly unconstitutional conduct, and a plaintiff fails to state a claim against the policy making official, dismissal of charges against the City is appropriate. *Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Moss v. Colo. Springs,* 871 F.2d 112, 114 (10th Cir.1989).[4] That is, where there are not sufficient allegations of wrongdoing by defendant Barber as the City's policy making official, no municipal liability can by based upon defendant Barber's alleged wrongdoings.

As set forth below, the court finds plaintiffs have failed to state claim under the Fourth Amendment against defendant Barber regarding: 1) his application for a search warrant (Count 1); and 2) his involvement in the prosecution of criminal charges against plaintiffs (Count 7).[5] Accordingly, given the above analysis, the court finds plaintiffs have failed to state the same claims against defendant City. Therefore, Count 1 is dismissed against defendant City to the extent it alleges a Fourth Amendment violation regarding application for search warrants. In addi-

tion, Count 7 is dismissed against defendant City.

### ● Individual Liability (James Barber)

Defendant Barber asserts that he is qualifiedly immune from the constitutional claims raised against him in Counts 1, 2, and 7. Moreover, defendant Barber argues that plaintiffs have failed to state any constitutional claims against him. As set forth below, the court agrees in part.

### ● Qualified Immunity

 Qualified immunity protects state actors from liability when acting within the scope of their employment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts. *Mitchell v. Forsyth,* 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio,* 847 F.2d 642, 644 (10th Cir.1988). The doctrine of qualified immunity serves the goals of protecting public officials "who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou,*

---

4. The court notes a different conclusion is justified where a policy making official is shielded from liability by qualified immunity. *See Watson v. Kan. City, Kan.,* 857 F.2d 690, 697 (10th Cir.1988) ("While it would be improper to allow a suit to proceed against the city if it was determined that the officers' action did not amount to a constitutional violation, ... there is nothing anomalous about

allowing such a suit to proceed when immunity shields the individual defendants.").

5. As noted in § III. B. 3., *infra,* the court construes Count 7 of plaintiffs' complaint as alleging a Fourth Amendment claim involving wrongful or malicious prosecution, rather than a Fourteenth Amendment claim.

438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

 Where a defendant raises the defense of qualified immunity in the context of a motion to dismiss, the court conducts a two part inquiry. First, the court must determine whether the plaintiff has asserted a violation of a constitutional or federal statutory right. *Neiberger v. Hawkins,* 6 Fed.Appx. 683, 685–86 (10th Cir.2001). Only where the complaint alleges a valid claim must the court proceed to the next inquiry. *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 516 (10th Cir.1998) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).[6] Next, the court examines whether the right allegedly violated is " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Ordinarily, for a law to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992); *see also Anderson,* 483 U.S. at 640, 107 S.Ct. 3034 (a right is clearly established if the contours of the right are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right").

 The court no longer applies a heightened pleading standard in the context of a qualified immunity defense. *See Currier v. Doran,* 242 F.3d 905 (10th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 543, 151 L.Ed.2d 421 (2001). Our review of the qualified immunity defense raised in a motion to dismiss is limited to the pleadings. *Gagan v. Norton,* 35 F.3d 1473, 1475 (10th Cir.1994). In assessing the pleadings, we construe the allegations in the complaint, and any reasonable inferences to be drawn therefrom, in favor of the petitioner. *See Sutton v. Utah State Sch. for Deaf and Blind,* 173 F.3d 1226, 1236 (10th Cir.1999). The court follows this two-step test to analyze the issue of qualified immunity raised by defendants here. *Butler v. City of Prairie Vill., Kan.,* 172 F.3d 736, 745 (10th Cir.1999).

● **Count 1: 42 U.S.C. § 1983 Fourth Amendment Search Without Probable Cause**

In Count 1, plaintiffs allege that defendants violated their right to be free from unreasonable search. Specifically, plaintiffs assert that "defendants Higgins and Blundell prepared [ ] an affidavit in support of a search warrant and obtained a search warrant based upon the affidavit executed by Higgins." (Pls.' Compl. at ¶ 103). Plaintiffs contend that the "search warrants were based solely on information received from [the informing students]." (*Id.* ¶ 59). In addition, plaintiffs assert that "[d]uring the early morning hours of

---

**6.** The Supreme Court has established a two-part approach to determine if qualified immunity applies. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question."

*Tonkovich,* 159 F.3d at 516 (citing *County of Sacramento,* 523 U.S. at 842 n. 5, 118 S.Ct. 1708). That is, only where the complaint alleges a valid claim must the court determine whether the constitutional right was clearly established so that reasonable officials would have understood that their conduct violated that right. *Albright v. Rodriguez,* 51 F.3d 1531, 1534–35 (10th Cir.1995).

December 18, 1999, defendants Higgins, Barber, C.W. Davis, aided by other members of local law enforcement and other agencies outside of their jurisdictions, conducted searches of each of the plaintiffs' homes." (*Id.* ¶ 103).

Defendant Barber contends that plaintiffs have failed to state a claim against him because the complaint does not allege that defendant Barber was personally involved in presenting information to the magistrate, it does not allege that the information in the affidavits was provided by defendant Barber, and it does not allege that defendant Barber entered any of the residences searched or acted wrongfully in connection with any of the searches. In addition, defendant Barber contends he is entitled to qualified immunity from plaintiffs' Fourth Amendment unreasonable search claim. The court agrees in part.

### a. Fourth Amendment Requirements

 The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. U.S. Const. Amend. IV; *Soldal v. Cook County, Ill.,* 506 U.S. 56, 62, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). To be constitutionally valid under the Fourth Amendment, a search must be reasonable. That is, it must be conducted pursuant to a valid search warrant and executed in accordance with Fourth Amendment principles. For a valid warrant to issue, it must appear from the affidavits supporting the application for the warrant that "there is probable cause to believe that an offense has been committed and that the defendant has committed it." Fed.R.Crim.P. 4; *Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir.1991) (citing *Wong Sun v. United States,* 371 U.S. 471, 481 n. 9, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). "The Fourth Amendment requires only that the warrant contain probable cause supported by an oath or affirmation and a particular description of the place, persons, and

things to be searched and seized." *United States v. Green,* 178 F.3d 1099, 1106 (10th Cir.1999) (citing *United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.1993)). Moreover, "the general touchstone of reasonableness which governs Fourth Amendment analysis, *see Pennsylvania v. Mimms,* 434 U.S. 106, 108–09, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), governs the method of execution of the warrant." *United States v. Ramirez,* 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998).

### ● Personal Participation in Application for and Execution of Search Warrants

 To prevail under § 1983, a plaintiff must establish that a defendant "acted under color of state law and caused or contributed to the alleged violation." *Jenkins,* 81 F.3d at 994. The plaintiff "must show the defendant personally participated in the alleged violation . . . it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Id.* Instead, a plaintiff must establish "a deliberate, intentional act by the supervisor to violate constitutional rights." *Id.* at 994–95. This standard may be satisfied by a showing that a "defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Id.*

 Here, plaintiffs have not alleged that defendant Barber personally participated in the drafting of the search warrant affidavit or in seeking its issuance. Nor have plaintiffs alleged that the information in the affidavit was provided by defendant Barber. In fact, plaintiffs specifically allege that defendants "Higgins and Blundell prepared [ ] an affidavit in support of a search warrant and obtained a search warrant based upon the affidavit executed

by Higgins" (Pls.' Compl. at ¶ 103). Further, plaintiffs contend that the "search warrants were based solely on information received from [the informing students]." (*Id.* ¶ 59). Therefore, the court finds plaintiffs have failed to state a claim against defendant Barber under the Fourth Amendment regarding the application for the search warrants in this case. Defendants' motion is granted on this basis. Count 1 of plaintiffs' complaint is dismissed against defendant Barber to the extent it alleges Fourth Amendment violations regarding the application for search warrants.

■ In contrast, plaintiffs have alleged that defendant Barber was personally involved in the execution of the search warrants. Plaintiffs specifically alleged that "[d]uring the early morning hours of December 18, 1999, defendants Higgins, Barber, C.W. Davis, aided by other members of local law enforcement and other agencies outside of their jurisdictions, conducted searches of each of the plaintiffs' homes." (*Id.* ¶ 103) (emphasis added). Defendants' motion is denied on this basis.

● **Good Faith Exception to Probable Cause Requirement**

Defendant Barber contends that where a magistrate issues a search warrant, no liability may be imposed upon the executing authorities for lack of probable cause. In addition, defendants contend that the general allegations of defendant Barber's participation in the execution of the search are insufficient to state a Fourth Amendment violation for unreasonable search, as there is no causal connection alleged between defendant Barber's actions and the purported constitutional violation. The court disagrees.

■ Although there is a general "evidentiary presumption that when a police officer carries out a search based on a warrant it is a good faith search," *Jenkins,* 81 F.3d at 995–96, an officer "is not automatically shielded from Section 1983 liability merely because a judicial officer approves a warrant." *Kaul v. Stephan,* 83 F.3d 1208, 1213 n. 4 (10th Cir.1996) (citing *Malley v. Briggs,* 475 U.S. 335, 345–46, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Rather, an officer "may face liability for obtaining a warrant not supported by probable cause when the application for the warrant 'is so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' despite a magistrate's authorization for the warrant." *Id.* (citing *Malley,* 475 U.S. at 344–45, 106 S.Ct. 1092 (citing *United States v. Leon,* 468 U.S. 897, 922–23 & 922 n. 23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984))).[7] To determine whether this test is met, the court's "inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 923, 104 S.Ct. 3430 (emphasis added). Moreover, significant to this case, the Supreme Court recognized that "[R]eferences to 'officer' should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable-cause determination." *Id.* at 923 n.

---

7. The Supreme Court recognized in *Malley* that "the same standard of objective reasonableness that we applied in the context of a suppression hearing in *[U.S. v.] Leon, supra,* defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, *Leon, supra,* at 923, 104 S.Ct. 3405, will the shield of immunity be lost." *Malley,* 475 U.S. at 344–45, 106 S.Ct. 1092.

24, 104 S.Ct. 3430 (emphasis added). Therefore, it is clear that liability may be assessed for execution of a search warrant, despite a magistrate's authorization, upon either an applying or an executing officer.

Here, plaintiffs allege that defendant Barber acted in violation of the Fourth Amendment by executing the issued search warrant, when defendant Barber knew that the information upon which the warrant was based was unreliable due to the well-known history of one of the informing students and knew that the information was un-corroborated. Therefore, plaintiffs assert, defendant Barber acted in violation of the Fourth Amendment's requirement of probable cause in executing the search.

 Plaintiffs specifically alleged that: Probable cause requires information to come from a reliable source and requires some type of independent corroboration of an informant's allegations. This is even more important if the informant's reliability is questionable or the informant's credibility is lacking, as was the case with [the informing student]. Defendants failed to establish probable cause for searching and seizing by relying solely on the unsubstantiated allegations of [the informing student].

(Pls.' Compl. at ¶ 104). Accepting plaintiffs' well-pled facts as true, as is required on a motion to dismiss, the court finds plaintiffs have stated a claim against defendant Barber for violation of the Fourth Amendment regarding the execution of the search warrants in this case. Defendants' motion is denied on this basis.

● **Immunity from Suit**

Defendant Barber next contends that he is qualifiedly immune from plaintiffs' Fourth Amendment search warrant claims. Having found plaintiffs stated a Fourth Amendment claim against defendant Barber regarding the execution of the search

warrants, the court next examines whether the constitutional right alleged was clearly established so that reasonable officials would have understood that their conduct violated that right. *Albright*, 51 F.3d at 1534–35.

 The court finds that it has long been clearly established a search warrant must be based on probable cause. *Green*, 178 F.3d at 1106. Moreover, the court finds it is clearly established that, as noted above, an officer "may face liability for obtaining a warrant not supported by probable cause when the application for the warrant 'is so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' despite a magistrate's authorization for the warrant." *Kaul*, 83 F.3d at 1213 n. 4. In addition, it is clear under the Supreme Court's *Leon* decision that liability may be assessed in these circumstances both to the officer who obtained the warrant and to the officer who executed it. *Leon*, 468 U.S. at 923 n. 24, 104 S.Ct. 3405.

 Considering defendant Barber's alleged conduct set forth above, plaintiffs' allegations that "[p]robable cause requires information to come from a reliable source and requires some type of independent corroboration of an informant's allegations," (Pls.' Compl. at ¶ 104), and the above-noted clearly established law, the court finds plaintiffs have asserted a violation of a constitutional right and that the asserted right is is " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Neiberger*, 6 Fed.Appx. at 685–86 (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034). Accordingly, the court finds plaintiffs have satisfied the general pleading standards applicable on a motion to dismiss. Therefore, defendant Barber is not qualifiedly immune from plaintiffs' Fourth Amendment claim regarding the unreasonable ex-

ecution of search warrants as set forth in Count 1. Defendants' motion is denied on this basis.

● **Count 2: 42 U.S.C. § 1983 Fourth Amendment Seizure Without Probable Cause**

In Count 2, plaintiffs allege that defendants violated their right to be free from unreasonable seizure. Specifically, plaintiffs assert that "based upon the search warrants obtained ... a search of the homes of the Smith family, the McReynolds family, the Spencer family, and the Vail family were conducted during the early morning hours of December 18, 1999.[N]o evidence supporting the allegations of the armed attack by these plaintiffs made by [the informing student] was discovered during the search of these plaintiffs' homes." (Pls.' Compl. at 38, ¶ 107). Moreover, plaintiffs allege that "[d]espite no discovery of any evidence to support the allegations made by [the informing student] against these plaintiffs, they were arrested and taken into custody." (*Id.* ¶ 109). In addition, plaintiffs specifically allege that "[e]ven after conducting searches of each of the boy's homes, the arresting officers lacked reasonably trustworthy information sufficient to lead a prudent person to believe that [the five student plaintiffs] had committed, were committing, or were about to commit an offense." (*Id.* ¶ 110). Plaintiffs assert that the five student plaintiffs were "seized (arrested) based solely on the unsubstantiated allegations of [the informing student].... [and] these allegations did not amount to probable cause." (*Id.*).

Defendant Barber contends that his arguments regarding Count 1 apply to Count 2. Specifically, defendant Barber asserts that plaintiffs have failed to allege that "Barber was even present or participated in any material way in the arrest of any of the plaintiffs." In addition, defendant Barber asserts he is qualifiedly immune

from suit on Count 2 of plaintiffs' complaint. The court disagrees.

● **Fourth Amendment Requirements**

 "Law enforcement personnel may arrest a person without a warrant if there is probable cause to believe that person committed a crime." *United States v. Wright*, 932 F.2d 868, 877 (10th Cir. 1991). A court will find probable cause to arrest when facts and circumstances from a reasonably trustworthy source are within the officer's knowledge and sufficiently warrant a person of reasonable caution to believe a crime has been or is being committed by the person to be arrested. *See United States v. Morgan*, 936 F.2d 1561, 1568 (10th Cir.1991).

● **Personal Participation**

 Applying the *Jenkins* standard discussed above, the court finds plaintiffs have sufficiently alleged that defendant Barber personally participated in the arrest of plaintiffs in this case. *Jenkins*, 81 F.3d at 994. In Count 2, plaintiffs allege that "defendants participating in these illegal seizures were James Barber, Scott Higgins and C.W. Davis." (Pls.' Compl. at ¶ 108). Therefore, plaintiffs have satisfied the requirement to plead that "the defendant personally participated in the alleged violation." *Jenkins*, 81 F.3d at 994. Defendants' motion is denied on this basis. c. Immunity from Suit

Defendant Barber also contends that he is qualifiedly immune from plaintiffs' Fourth Amendment arrest claims. Having found plaintiffs stated a Fourth Amendment claim against defendant Barber regarding the five student plaintiffs' arrests, the court next examines whether the constitutional right alleged was clearly established so that reasonable officials would have understood that their conduct violated that right. *Albright*, 51 F.3d at 1534–35.

The court finds that it has long been clearly established an arrest must be based on probable cause. *Wright,* 932 F.2d at 877. Moreover, the court finds it is clearly established that probable cause to arrest may be based on "facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information ... sufficient to warrant a prudent officer in believing that the defendant had committed or was committing a crime." *United States v. Gordon,* 173 F.3d 761, 766 (10th Cir.1999).

Here, plaintiffs allege that defendant Barber and the other officers involved in "seizing" the persons of the five student plaintiffs based their finding of probable cause to arrest only on the information from the informing student, which was unreliable based on that informing student's well-known history. Plaintiffs allege defendant Barber possessed no further information gathered from the search of the five student plaintiffs' homes to support their probable cause finding. In addition, plaintiffs allege that "[t]he law is clearly established that an arrest must be supported by probable cause ... [and that] no reasonable person could have concluded that probable cause existed to believe the plaintiffs had engaged in illegal conduct, and no reasonable person would have arrested [the five student plaintiffs]." (Pls.' Compl. at ¶ 110).

Therefore, taking plaintiffs' allegations as true, the court finds plaintiffs have asserted a violation of a constitutional right and that the asserted right is " 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Neiberger,* 6 Fed. Appx. at 685–86 (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034). Accordingly, the court finds plaintiffs have satisfied the general pleading standards applicable on a motion to dismiss. Therefore, defendant Barber is not qualifiedly immune from plaintiffs' Fourth Amendment arrest claim as set forth in Count 2. Defendants' motion is denied on this basis.

● **Count 7: 42 U.S.C. § 1983 Fourteenth Amendment Substantive Due Process**

In Count 7, plaintiffs allege that defendants violated their right to receive substantive due process. Specifically, plaintiffs allege that "[d]efendants initiated prosecution against the [five student plaintiffs], and later Mallory Sanders, in such a manner as to violate their substantive due process rights under the Fourteenth Amendment. The defendants named herein exercised their power in an arbitrary and oppressive manner. Their activities shock the conscience and/or interfere with rights implicit in the concept of ordered liberty. Their actions were willful and wanton and were done with a reckless disregard for plaintiff's [sic] rights. Defendants had ample time to consider the actions and conform their behavior to legal requirements prior to taking any action ... in regard to the plaintiffs. Defendants acted recklessly and were deliberately indifferent to the constitutional rights of plaintiff." (Pls.' Compl. at ¶ 137). Plaintiffs specify that Count 7 "applies to defendant[ ] ... James Barber." (*Id.* ¶ 138).

Defendants summarily assert that their prior arguments apply to Count 7. Defendants specifically argue that there are "no factual allegations against either Chief Barber or the city of Altamont which form the basis for any constitutional tort against the plaintiffs." (Defs.' Mot. at 7). Therefore, defendants argue plaintiffs have failed to state a Fourteenth Amendment substantive due process claim against them.

● **Substantive Due Process**

First, the court notes that it construes Count 7 of plaintiffs' complaint as alleging

a Fourth, rather than Fourteenth Amendment claim. As noted, plaintiffs allege in Count 7 that the prosecution against the five student plaintiffs and plaintiff Mallory Sanders was initiated in a willful and wanton manner and with a reckless disregard for plaintiffs' rights. Plaintiffs allege defendants' conduct in conjunction with their prosecution violated their Fourteenth Amendment substantive due process rights. Accordingly, the court construes Count 7 of plaintiffs' complaint as asserting a malicious prosecution-like claim.

■ In *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), a plurality of the Supreme Court held that the Fourth Amendment governed "pretrial deprivations of liberty." *Id.* at 274–75, 114 S.Ct. 807. Therefore, the constitutional right implicated when a malicious prosecution-like claim is raised under § 1983 is a Fourth, rather than Fourteenth, Amendment right. *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10th Cir.1996). As noted by the Tenth Circuit in *Taylor,* Fourteenth Amendment substantive due process standards have no applicability in a § 1983 malicious prosecution Fourth Amendment action. *Id.* (reconciling prior Tenth Circuit precedent and concluding that "our circuit takes the common law elements of malicious prosecution as the 'starting point' for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a *constitutional* violation ... [and noting that] [f]ollowing *Albright,* in the § 1983 malicious prosecution context, that constitutional right is the Fourth Amendment right to be free from unreasonable seizures"). The court, therefore, addresses

plaintiffs' claims in Count 7 in a Fourth Amendment context.

● **Personal Participation**

Applying the *Jenkins* standard discussed above, the court examines whether the allegations of defendant Barber's involvement in the allegedly wrongful conduct satisfy § 1983's personal participation requirement. *See Jenkins,* 81 F.3d at 994.

Plaintiffs assert that defendant Barber "actively participated (sic) the investigation of the false allegations, he then encouraged other law enforcement officials to seek warrants, and he participated in the illegal searches." (Pls.' Resp. at 9). However, plaintiffs have not alleged that defendant Barber initiated any prosecution, that he signed any pleading in the case or prepared any affidavits in support of the case, or that he was involved in any other manner either in the decision to bring criminal charges against the student plaintiffs or in commencing or advancing the prosecution against the students.

■ Considering that plaintiffs' Fourth Amendment claim (pled as a Fourteenth Amendment substantive due process claim) is based on the prosecution of the charges against the five student plaintiffs and plaintiff Mallory Sanders, and considering the lack of allegations regarding defendant Barber's involvement in the prosecution of these charges, the court finds plaintiffs have failed to sufficiently allege the necessary personal participation by defendant Barber. Accordingly, the court finds plaintiffs have failed to state a Fourth Amendment claim for wrongful or malicious prosecution against defendant Barber in Count 7.[8] Defendants' motion is granted on this basis.

**8.** As noted *supra,* plaintiffs' failure to state a Fourth Amendment claim (plead as Fourteenth Amendment substantive due process claim) against defendant Barber is fatal to

their Fourth Amendment claim against defendant City of Altamont. *See supra,* § III. A. 1.; *Los Angeles,* 475 U.S. at 799, 106 S.Ct. 1571; *Moss,* 871 F.2d at 114.

Accordingly, the court finds it unnecessary to reach defendant Barber's assertion of qualified immunity regarding Count 7. *See Tonkovich*, 159 F.3d at 516 (where defense of qualified immunity raised court should first determine whether plaintiff alleged deprivation of constitutional right and "it is only then that a court should ask whether the right allegedly implicated was clearly established"). The court dismisses Count 7 as alleged against defendant Barber.

● **State Law Claims (Defendants City and Barber)—Supplemental Jurisdiction**

Finally, the moving defendants argue plaintiffs' state law claims against defendant Barber and defendant City should be dismissed where no federal claims remain against these defendants.[9] Because the court has declined to dismiss all federal claims against defendant Barber and defendant City, the court finds no merit in defendants' arguments for dismissal of plaintiffs' supplemental state law claims. *See* 28 U.S.C. § 1367(a) (court may exercise supplemental jurisdiction over state law claims if they are sufficiently related to a pending claim over which the court has original jurisdiction) and *id.* § 1367(c) (court need not exercise supplemental jurisdiction and may decline to do so under § 1367(c) if the court "has dismissed all claims over which it has original jurisdiction").

Defendants' motion is denied on this basis.

● **Order**

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss (Doc. 6) is granted in part. Count 1 of plaintiffs' complaint is dismissed against defendant Barber and defendant City to the extent it

alleges a Fourth Amendment violation regarding the application for the search warrants at issue in this case. Count 7 of plaintiffs' complaint is dismissed against defendant Barber and defendant City.

---

9. Defendants further assert, without supporting argumentation, that the state law claims raised against them in Counts 10, 11, and 12 should be dismissed because they are either barred by the applicable statute of limitations or by "other substantive and procedural defects (K.S.A.12–105b)." (Defs.' Mem. at 8). Because defendants provide no support for their assertions, the court declines to address them.